832 A.2d 1014

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Bernard McGILL, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 22, 1999.

Decided Sept. 29, 2003.

576

Scott Frederick Griffith, Ramy I. Djerrassi, Philadelphia, for Bernard McGill, Appellant.

Hugh J. Burns, Philadelphia, Amy Zapp, Harrisburg, for the Com. of PA, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

JUSTICE NEWMAN.

Bernard McGill (McGill) appeals from an Order of the Court of Common Pleas of Philadelphia County (PCRA court) denying his Petition for Post–Conviction Relief pursuant to the Post–Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. For the reasons set forth herein, we affirm in part, and vacate and remand in part, the Order of the PCRA court.

### FACTS AND PROCEDURAL HISTORY

On February 10, 1990, Susan Phillips (Phillips) and Karen Forte (Forte) were at the home of Phillips for Bible study. McGill had been a boarder at Phillips' home until the previous week, at which time Phillips asked McGill to move out of her house. McGill arrived at the residence and knocked on the door. Phillips opened the door and McGill informed her that he had returned to get his clothes. Phillips acknowledged the request, closed the door, and proceeded upstairs to retrieve McGill's belongings.

While Phillips and Forte were in the process of bringing McGill's clothes downstairs, they noticed that McGill had entered the house uninvited. Forte attempted to give McGill a bag of clothes, but McGill punched her in the face, causing her to fall to the ground. A violent struggle ensued between Forte and McGill, during which McGill brandished a knife, punched, kicked, and stabbed Forte. McGill then grabbed Forte by the hair and dragged her into the kitchen. Phillips screamed and begged McGill to stop and leave. McGill told Phillips to "[S]hut up [before] I put this knife in your back...." (Notes of Testimony (N.T.) 7/21/92, page 65).

McGill then proceeded to bind the wrists of Forte with cord and pulled down her pantyhose. Forte pleaded with McGill not to rape her; McGill responded by punching and kicking her in the head until she lost consciousness. At some point thereafter, while Forte was still unconscious, McGill severely beat Phillips, who was seventy-two years old at the time. In addition to punching Phillips, McGill repeatedly struck her in

the head with a metal file. He struck Phillips with such force that the handle of the file broke off.

When Forte regained consciousness, McGill returned to the room where she was tied up; he accused her of faking. He repeatedly choked, punched, and kicked Forte, complaining that she would not die. McGill then struck Forte over the head with a glass ketchup bottle, causing the bottle to break. Forte pretended to be unconscious in the hope that McGill would believe that she had died. McGill then left the scene. Forte remained still for several minutes in order to ensure that McGill was in fact gone. She then went to the house of a neighbor to call the police. Both victims were taken to a local hospital. Phillips died as a result of her injuries within an hour of reaching the hospital. Original Record, Trial Memorandum, page 1. Forte spent three days in intensive care and another three days in general recovery. While in the hospital, she identified McGill as her assailant from a photographic array.

The police arrested McGill and the Commonwealth charged him with numerous crimes stemming from the above-recounted episode. While in police custody, McGill confessed to the crime, stating that he went to Phillips' house with the intention of stealing money to purchase drugs. He admitted that he punched and struck Phillips in the head with a metal file. He further acknowledged that, after beating the two women, he stole two hundred dollars from the purse of Phillips and spent all the monies on cocaine.

On July 28, 1992, following a jury trial, the jury convicted him of first-degree murder,[1] aggravated assault,[2] recklessly endangering another person,[3] and possession of an instrument of crime.[4] During the penalty phase hearing, which occurred the following day, McGill jumped out of a window in the courtroom and was seriously injured. The trial court declared

1. 18 Pa.C.S. § 2502(a).
2. 18 Pa.C.S. § 2702.
3. 18 Pa.C.S. § 2705.
4. 18 Pa.C.S. § 907.

a mistrial because the entire jury had witnessed the auto-defenestration.

On January 23, 1993, after McGill had recovered from his injuries, the trial court empanelled a new penalty phase jury. At the conclusion of the penalty phase hearing, the jury found one aggravating circumstance, that McGill killed Phillips while in the perpetration of a felony,[5] and no mitigating circumstances. Accordingly, pursuant to 42 Pa.C.S. § 9711(c)(1)(iv), the trial court set the sentence at death. On March 23, 1993, the court permitted Gerald Ingram, Esquire (trial counsel), to withdraw and appointed new counsel, Jeremy Ibrahim, Esquire (appellate counsel). McGill filed post-verdict motions, alleging, *inter alia*, ineffective assistance of trial counsel. After an evidentiary hearing, the trial court denied the post-verdict motions and imposed the death sentence. The trial court also sentenced McGill to a consecutive term of ten to twenty years for the aggravated assault and a concurrent term of five to ten years for possession of an instrument of crime. On direct appeal, we affirmed the conviction and the Judgment of Sentence. *Commonwealth v. McGill*, 545 Pa. 180, 680 A.2d 1131 (1996), *cert. denied*, 519 U.S. 1152, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997).

On November 5, 1996, McGill filed a *pro se* PCRA Petition, whereupon the PCRA court appointed Scott Griffith, Esquire, and Ramy Djerassi, Esquire (collectively, PCRA counsel), to represent McGill. On March 24, 1997, the Governor of Pennsylvania issued a warrant of execution for McGill for the week of April 13, 1997. On March 27, 1997, the PCRA court ordered that the execution be stayed pending resolution of the PCRA claims of McGill. PCRA counsel filed an amended Petition on behalf of McGill on September 8, 1997. The Commonwealth subsequently filed a Motion to Dismiss, which the PCRA court decided to grant on January 9, 1998.

On January 16, 1998, the PCRA court sent to McGill notice of its intention to dismiss the PCRA Petition, stating that the issues McGill raised in his Petition were without merit. On

5. 42 Pa.C.S. § 9711(d)(6).

February 5, 1998, McGill filed supplemental affidavits and exhibits in support of the claims raised in his Petition. By Order dated March 18, 1998, the PCRA court dismissed McGill's PCRA Petition without a hearing. On March 26, 1998, McGill filed a Notice of Appeal in this Court. Unfortunately, the PCRA court judge, the Honorable Eugene H. Clark, Jr. (Judge Clark), passed away before he had the opportunity to write his opinion ancillary to dismissing the PCRA Petition. We remanded the matter to the PCRA court for the drafting of an opinion in support of the Order denying the PCRA Petition. On July 30, 2001, the PCRA court, by the Honorable Judge Benjamin Lerner (Judge Lerner), filed an Opinion in support of Judge Clark's denial of PCRA relief.

## DISCUSSION

On October 15, 2001, McGill filed an amended brief with this Court. McGill raises the following four issues in his brief: [6]

1. Are constitutional violations during the penalty phase cognizable under the PCRA as amended in 1995?

2. Was the PCRA court correct to deny relief when prosecutors failed to disclose material discovery affecting the reliability of a statement by a jailhouse informant whose claims influenced trial counsel's decision to withhold any and all evidence of McGill's psychosis from the penalty phase jury?

3. Did trial counsel violate the Sixth Amendment by failing to give the court-appointed psychologist available medical records for review on guilt phase issues of diminished capacity and insanity?

4. Did trial counsel violate the Sixth Amendment when he failed to investigate psychiatric records and seek avail-

---

**6.** In addition to the four issues raised in the instant brief, in his original brief to this Court, McGill also contended that his death sentence violated his due process rights because of alleged systematic racial discrimination in the criminal justice system of Philadelphia. It appears that McGill has abandoned this claim. Moreover, he did not raise this argument until after the PCRA court denied his Petition, so the claim is waived. We have renumbered the issues for ease of discussion.

able expert opinions, and instead relied on his own mistaken lay assumptions to deny a penalty jury overwhelming evidence that McGill has chronic psychosis?

■ McGill first contends that claims of ineffective assistance of counsel in connection with alleged sentencing phase errors are cognizable pursuant to the PCRA and that he is entitled to relief due to these sentencing errors. Four years ago, in *Commonwealth v. Chester,* 557 Pa. 358, 733 A.2d 1242 (1999), we held definitively that alleged errors of counsel in the penalty phase of a capital trial are cognizable in postconviction proceedings. 42 Pa.C.S. § 9543(a)(2)(ii) limits ineffectiveness claims that may be raised pursuant to the PCRA to those that "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." In *Chester,* we held that the penalty phase is both a "truth-determining process" and an "adjudication of guilt or innocence." *Chester,* 733 A.2d at 1249. However, McGill fails to explain how resolution of this issue entitles him to any relief. In its Opinion, the PCRA court did not dismiss the penalty phase claims as not cognizable; instead, the court discussed the procedural bars of previous litigation and waiver, as well as the merits of the claims. While McGill makes a valid and accurate argument in this regard, nonetheless, it does not afford him a basis for relief.

■ McGill next alleges a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he asserts that the Commonwealth impermissibly failed to disclose to him that Hassan Bilal (Bilal), one of McGill's former cellmates, was a regular jailhouse informant who pled guilty to third-degree murder and received a sentence of time-served in exchange for his cooperation against McGill and others. The Commonwealth disclosed to trial counsel a statement made by Bilal on August 15, 1991. In that statement, Bilal related to detectives a jailhouse conversation he had with McGill, during which McGill admitted to having stabbed and raped a woman named "Susie." Bilal continued as follows:

That when he go [sic] to court, he is going to try and plea [sic] insanity, because his lawyer was trying to get him 1–3 years at Norris [sic] State Hospital. They have him on K-unit and plays like he is crazy. He said that he had already fooled a couple of psychiatries [sic] over at the D.C. and he only got to fool one more, to get the verdict of not guilty by insanity. McGill told me he was that, that [sic] he was going to tell the people in court that his name is Sam Roberts, the Son of Satan. . . . He said that when he goes to court, he is going to be talking to himself, then burst out laughing. His lawyer told him that it would look good in court.

Reproduced Record, pages 97a–98a.

■■■ To establish a *Brady* violation, a defendant must show that: (1) the evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence at issue is favorable to the defendant; and (3) the evidence was material, meaning that prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281–282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). *See Commonwealth v. Copenhefer*, 553 Pa. 285, 719 A.2d 242, 259 (1998), *cert. denied*, 528 U.S. 830, 120 S.Ct. 86, 145 L.Ed.2d 73 (1999) (requiring reference to the record to prove a *Brady* violation). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). *See also United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the out-come").

In the case *sub judice*, the alleged *Brady* violation is mere conjecture. Bilal never testified at trial. The Commonwealth gave the statement of Bilal to trial counsel. McGill merely argues that Bilal testified for the Commonwealth in another

case; he speculates that, had trial counsel asked the Commonwealth for documents relating to Bilal's participation in other cases, the Commonwealth would not have provided it. McGill does not even point to any other case in which Bilal supposedly cooperated with the Commonwealth. Thus, McGill has failed to establish that there was any evidence to suppress, let alone that the Commonwealth willfully or inadvertently suppressed it. Accordingly, McGill has not demonstrated a *Brady* violation. Moreover, McGill provides us with no reason why he could not have raised this claim during trial, in post-verdict motions, or on direct appeal. Therefore, McGill is not entitled to relief on this claim as presented.

McGill also raises claims of ineffective assistance of counsel related to the alleged failure of trial counsel to: (1) provide to a court-appointed psychologist available mental records to enable the psychologist to recommend an insanity or diminished capacity defense during the guilt phase; and (2) investigate psychiatric records and seek available expert opinions to support the presentation of potential mitigating factors during the penalty phase.[7] We recognize that, to this date, our jurisprudence in the PCRA context for handling claims of ineffectiveness of prior counsel has been murky. We now take this opportunity to clarify the law in this regard and set forth the appropriate framework for preservation and presentation of claims of ineffective assistance of counsel pursuant to the PCRA.

42 Pa.C.S. § 9543(a)(2)(ii) requires a PCRA petitioner to "plead and prove by the preponderance of the evidence ... [t]hat the conviction or sentence resulted from ... [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." In *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d

7. We note that these claims bear some similarity to claims McGill raised in post-trial motions to the trial court following his conviction and death sentence, but he attempts to differentiate these contentions from those he presented before. In the interest of providing McGill with full and fair review, we will treat the claims as distinct from those raised in post-trial motions.

203, 213 (2001), we explained that, to be entitled to relief on a claim of ineffective assistance of counsel, the PCRA petitioner must satisfy a three-pronged test and demonstrate that: (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of that counsel's deficient performance. *See also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[8]

The manner in which this construct operates when a litigant is challenging the effectiveness of his or her immediate prior counsel is well settled. Causing uncertainty among the bench and bar, however, is how to preserve and prove a PCRA claim challenging the effectiveness of counsel other than immediate prior counsel. For ease of the ensuing discussion, consider the following hypothetical situation. Counsel 1 represented the defendant at trial.[9] A jury convicted the defendant of the crimes charged, the court entered judgment, and the defendant sought and received appointment of new counsel, Counsel 2, to file a direct appeal.[10] Counsel 2 filed a direct appeal. However, the appellate court affirmed the Judgment of Sentence. The defendant sought and received appointment of another new counsel, Counsel 3, to file a PCRA petition.[11]

**8.** For convenience, we refer to the three prongs of the *Pierce* test as follows: "prong 1" is the "arguable merit" prong; "prong 2" is the "reasonable basis" prong; and "prong 3" is the "prejudice" prong.

**9.** "Counsel 1" refers to counsel who allegedly should have presented the underlying claim in the first instance. In our hypothetical, Counsel 1 is "trial counsel."

**10.** Counsel 2 need not necessarily be counsel for the direct appeal filed by the defendant. In some instances, defendants seek appointment of new counsel to file post-trial motions; other defendants wait until they file a PCRA petition to obtain new counsel. Whatever the procedural history of the specific case, where current counsel seeks to challenge the actions or omissions of counsel other than immediate prior counsel, "Counsel 2" represents the universe of immediate prior counsel and all other counsel (other than Counsel 1) assigned to the case who had the ability and opportunity to challenge the effectiveness of Counsel 1, but did not. In our hypothetical, Counsel 2 is "appellate counsel."

**11.** "Counsel 3" refers to current counsel, who seeks to challenge the actions or omissions of Counsel 1. In our hypothetical, Counsel 3 is "PCRA counsel."

Counsel 3 reviewed the record and ascertained that the trial court gave an erroneous jury instruction, to which Counsel 1 never objected; Counsel 2 never challenged the failure of Counsel 1 to object to the charge.

The PCRA petitioner, through Counsel 3, now wishes to raise a claim of counsel ineffectiveness pursuant to the PCRA. To do so, the petitioner must scale the barrier of waiver created when Counsel 2 (appellate counsel) failed to allege that Counsel 1 (trial counsel) was ineffective for not objecting to the erroneous jury instruction. This is because, pursuant to the PCRA, the failure of Counsel 2 to raise the ineffectiveness of Counsel 1 on direct appeal waived the claim that Counsel 1 was ineffective. *See* 42 Pa.C.S. §§ 9543(a)(3), 9544(b).[12] Thus, the only claim of counsel ineffectiveness that Counsel 3 (PCRA counsel) may raise in his PCRA Petition is that of the ineffectiveness of Counsel 2 (appellate counsel) for failing to claim on direct appeal that Counsel 1 (trial counsel) was ineffective for failing to object to the jury charge.[13] *See Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 530–537 (2001) (Castille, J., concurring). We have termed this a claim of "layered ineffectiveness." The manner by which a petitioner preserves, through pleading and presentation in his briefs, and proves a claim of layered ineffectiveness sufficient to warrant relief in a meritorious case, however, has been a source of disagreement and confusion. *See, e.g., Commonwealth v. Clayton*, 572 Pa. 395, 816 A.2d 217 (2002); *Com-*

12. 42 Pa.C.S. § 9543(a)(3) provides that "[t]o be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence that the allegation of error has not been previously litigated or waived." 42 Pa.C.S. 9544(b) explains that, [f]or purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, on appeal or in a prior state postconviction proceeding.

13. We note that the recent decision of this Court in *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), obviates the need for Counsel 2 to assert the ineffectiveness of Counsel 1 in cases where the direct appeal is filed after *Grant*, as the rule announced in *Grant* indicates that claims of ineffectiveness of trial counsel should be raised for the first time in the first PCRA petition. In the collateral appeal (PCRA) context and cases pending where a court on direct appeal has reviewed claims of ineffective assistance of counsel, the *Grant* rule is not implicated.

*monwealth v. Jones,* 572 Pa. 343, 815 A.2d 598 (2002); *Commonwealth v. Meadows,* 567 Pa. 344, 787 A.2d 312 (2001); *Commonwealth v. Simmons,* 786 A.2d 943 (Pa.2001).

 With this in mind, and using our hypothetical, we now clarify that in order for a petitioner to properly raise and prevail on a layered ineffectiveness claim, sufficient to warrant relief if meritorious, he must **plead, present,** and **prove** the ineffectiveness of Counsel 2 (appellate counsel), which as we have seen, necessarily reaches back to the actions of Counsel 1 (trial counsel). To preserve (plead and present) a claim that Counsel 2 was ineffective in our hypothetical situation, the petitioner must: (1) **plead,** in his PCRA petition, that Counsel 2 was ineffective for failing to allege that Counsel 1 was ineffective for not objecting to the erroneous jury instruction, *see Commonwealth v. Marrero,* 561 Pa. 100, 748 A.2d 202, 203, n. 1 (2000); and (2) **present** argument on, i.e., develop, each prong of the *Pierce* test as to Counsel 2's representation, in his briefs or other court memoranda. Then, and only then, has the petitioner preserved a layered claim of ineffectiveness for the court to review; then, and only then, can the court proceed to determine whether the petitioner has proved his layered claim.[14]

 In his brief, the petitioner must present his layered ineffectiveness claim as follows, and to be entitled to relief pursuant to the PCRA, he must prove:

**Prong 1—Arguable Merit**—The petitioner must show that the underlying claim is of arguable merit—the underlying claim here is that of the ineffectiveness of Counsel 1 (trial counsel in our hypothetical). To demonstrate that the claim that Counsel 1 was ineffective has arguable merit, the petitioner must apply the three-prong *Pierce* test to the underlying claim of Counsel 1's ineffectiveness:

(A) **Prong 1—Arguable Merit**—There must be arguable merit to the underlying legal issue that is the basis of the

14. As noted, the PCRA requires the petitioner to "plead and prove" that "the conviction or sentence resulted from ... [i]neffective assistance of counsel...." 42 Pa.C.S. § 9543(a)(2)(ii).

contention that Counsel 1 was ineffective (in our hypothetical situation, that the jury instruction was erroneous);

**(B) Prong 2—Reasonable Basis**—Counsel 1 had no reasonable basis for acting or failing to act (Counsel 1 had no reasonable basis for failing to object to the instruction). We take this opportunity to emphasize that the court should not glean or surmise from the record whether Counsel 1 had a reasonable basis for his action or inaction. It is only in the most clear-cut of cases that the reasons for the conduct of counsel are clear from the record. Thus, only where the record clearly establishes that the action or omission of Counsel 1 was without a reasonable basis should the court resolve the reasonable basis prong absent a remand for an evidentiary hearing as to the strategy of counsel; and

**(C) Prong 3—Prejudice**—The defendant was prejudiced by the action or omission of Counsel 1 (had Counsel 1 objected to the instruction, "there is a reasonable probability that ... the outcome of the proceeding would have been different." *Pierce*, 786 A.2d at 213).

If the petitioner does not satisfy any of these three lettered prongs, he will have failed to establish the ineffectiveness of Counsel 1, necessarily defeating the claim that Counsel 2 (appellate counsel in our hypothetical) was ineffective for failing to raise the ineffectiveness of Counsel 1. The claim that Counsel 1 was ineffective underlies the petitioner's challenge to the stewardship of Counsel 2. Thus, the layered ineffectiveness claim (as to Counsel 2's ineffectiveness), which is the claim over which the court retains cognizance, necessarily fails, and relief must be denied. However, if the petitioner has proved each of these three prongs relative to the performance of Counsel 1, the arguable merit aspect of the claim that Counsel 2 was ineffective is *per se* established. Only then does the inquiry proceed to determine whether the petitioner has established the reasonable basis and prejudice prongs of the *Pierce* test relative to Counsel 2.

**Prong 2—Reasonable Basis**—The petitioner must next demonstrate that Counsel 2 did not have a reasonable basis for failing to raise the meritorious claim that Counsel 1 was ineffective. The focus in this regard is the stewardship of Counsel 2, not of Counsel 1. As discussed above, the court is not to glean, surmise, or speculate with regard to the strategy of counsel except in those rare instances where his strategy is clear and obvious from the record under review.

**Prong 3—Prejudice**—Finally, the petitioner must establish that the defendant suffered prejudice as a result of the failure of Counsel 2 to raise the meritorious claim that Counsel 1 was ineffective. Specifically, Counsel 3 must show that there is a reasonable probability that the outcome of the proceedings in which Counsel 2 was the attorney of record would have been different had Counsel 2 brought forth the claim that Counsel 1 was ineffective.

Succinctly stated, a petitioner must plead in his PCRA petition that his prior counsel, whose alleged ineffectiveness is at issue, was ineffective for failing to raise the claim that the counsel who preceded him was ineffective in taking or omitting some action. In addition, a petitioner must present argument, in briefs or other court memoranda, on the three prongs of the *Pierce* test as to each relevant layer of representation. Using our hypothetical, this means that the arguable merit prong of the *Pierce* test as to the claim that appellate counsel was ineffective in not raising trial counsel's ineffectiveness consists of the application of the three-prong *Pierce* test to the underlying claim of trial counsel's ineffectiveness. If any one of the prongs as to trial counsel's ineffectiveness is not established, then necessarily the claim of appellate counsel's ineffectiveness fails. Only if all three prongs as to the claim of trial counsel's ineffectiveness are established, do prongs 2 and 3 of the *Pierce* test as to the claim of appellate counsel's ineffectiveness have relevance, requiring a determination as to whether appellate counsel had a reasonable basis for his course of conduct in failing to raise a meritorious claim of trial counsel's ineffectiveness (prong 2) and whether petitioner was prejudiced by appellate counsel's course of conduct

in not raising the meritorious claim of trial counsel's ineffectiveness (prong 3).

In the case *sub judice*, McGill pled a layered ineffectiveness claim relative to the penalty phase of his trial in his amended PCRA Petition. *See* ¶ 32 ("Post-trial and appellate counsel ... was ineffective for ... his failure to raise trial counsel's ineffectiveness at the second penalty hearing on issues other than petitioner's competency to stand trial at the penalty hearing itself"). · However, McGill failed to brief his layered ineffectiveness claim by applying the *Pierce* test to each level of representation. Accordingly, the instant appeal is vulnerable to dismissal because McGill failed to present adequately (and, therefore, also to prove) a layered ineffectiveness claim.

 Ultimately, we recognize that we have not been clear as to exactly what is required of a PCRA petitioner seeking to plead, present, and ultimately prove a layered claim of counsel ineffectiveness. Pennsylvania Rule of Criminal Procedure 905 provides in relevant part as follows:

> (A) The judge may grant leave to amend or withdraw a petition for post-conviction collateral relief at any time. Amendment shall be freely allowed to achieve substantial justice.
>
> (B) When a petition for post-conviction collateral relief is defective as originally filed, the judge shall order amendment of the petition, indicate the nature of the defects, and specify the time within which an amended petition shall be filed. If the order directing amendment is not complied with, the petition may be dismissed without a hearing.

Pa.R.Crim.P. 905. This rule indicates the desire of this Court to provide PCRA petitioners with a legitimate opportunity to present their claims to the PCRA court in a manner sufficient to avoid dismissal due to a correctable defect in claim pleading or presentation. *See Williams*, 782 A.2d at 526–527 (interpreting the predecessor to Rule 905 to require the PCRA court to allow amendment of the petition so that the petitioner can make "a sufficient offer ... to warrant merits review"). Accordingly, similar to our disposition in *Williams*, a remand

to the PCRA court may be appropriate for cases currently pending in the appellate courts where the petitioner has failed to preserve, by pleading and/or presenting, a layered ineffectiveness claim in a manner sufficient to warrant merits review.

 McGill attempted to present to the PCRA court a substantive and legally cognizable underlying claim that his trial counsel failed to: (1) provide the court-appointed psychologist with medical records to permit a fair determination of McGill's mental health; and (2) investigate psychiatric records and seek available expert opinions to support the presentation of potential mitigating factors during the penalty phase. Nowhere did the PCRA court articulate that the denial of the PCRA Petition was founded upon McGill's failure to assert and/or argue a claim of layered ineffectiveness of counsel. Instead, the PCRA court denied the claims because it determined that McGill had failed to establish that trial counsel rendered ineffective assistance. While today we have articulated a general preference toward remanding cases currently pending in the PCRA appellate pipeline where the PCRA petitioner has not pled and/or presented a layered ineffectiveness claim in a manner sufficient to obtain merits review, we caution the bench and bar not to read this as a reprieve for PCRA petitioners who have failed to sufficiently plead and present argument on the ineffective assistance of Counsel 1 (in this case, trial counsel), which is an essential aspect of a layered ineffectiveness claim.

In the case *sub judice*, the PCRA court reviewed the record and determined that trial counsel was not ineffective. We have explained that a determination that Counsel 1, trial counsel in the present case, rendered ineffective assistance is a prerequisite to finding that Counsel 2, appellate counsel here, was ineffective. The test for establishing that the performance of Counsel 1 was deficient is well settled and we will not permit a remand based on the failure of a PCRA petitioner to thoroughly plead and prove a claim that Counsel 1 was ineffective.

■ We conclude that McGill has failed to establish that trial counsel provided him with ineffective assistance on this claim. Therefore, the claim of McGill that trial counsel rendered ineffective assistance does not have arguable merit. Trial counsel testified at the hearing on post-trial motions that he did not present diminished capacity or insanity defenses at trial because he reviewed myriad medical reports, all of which indicated that McGill was competent to stand trial and likely was faking a psychiatric condition to avoid criminal responsibility for his actions. (Notes of Testimony, April 13, 1994, pages 30–31.) Therefore, trial counsel had no reason to believe that the court-appointed psychologist would have interpreted these records differently. Additionally, as the PCRA court stated, trial counsel feared raising such a defense because it would allow the Commonwealth to introduce the statement of Bilal, that McGill admitted to a strategy of pretending to be suffering from psychosis, in rebuttal. *Id.* at 32–33. Accordingly, McGill has failed to establish that trial counsel did not have a reasonable basis for not providing the court-appointed psychologist with the medical records, all of which indicated that he did not suffer from any psychiatric impairment.[15]

McGill also asserts that trial counsel was ineffective for failing to investigate fully, possible mitigating circumstances for his penalty phase. The Opinion of the PCRA court denies this claim, reasoning that McGill did not present any evidence in his PCRA petition to support it. Accordingly, the PCRA court determined that McGill failed to proffer sufficient facts from which a court could determine that trial counsel was ineffective and that, therefore, he could not establish the arguable merit prong of his layered ineffectiveness claim as to the representation of appellate counsel.

**15.** As we noted in footnote 7, *supra,* the contention raised by McGill that trial counsel was ineffective with respect to the presentation of mental health evidence is different from the claim he raised on post-trial motions. The testimony of trial counsel as to the judgments he made in ultimately deciding not to present mental health evidence encompasses the present claim.

However, the record belies the finding of the PCRA court. On February 5, 1998, McGill filed affidavits from Dr. Alan Tepper (Dr. Tepper) and Dr. Julie Kessler (Dr. Kessler), two clinical and forensic psychologists who evaluated McGill in 1991 and 1992, and Dr. Harry Krop (Dr. Krop), a licensed neuropsychologist. Dr. Tepper averred that he saw McGill at the request of trial counsel, but that trial counsel never discussed with him the possible presentation of mental health evidence in mitigation during the penalty phase of McGill's trial. Dr. Kessler, who, as medical director of the Norristown State Hospital, assessed the competency of McGill to stand trial, stated that trial counsel never contacted her to learn of potentially relevant mitigating mental health evidence. Dr. Krop, who evaluated McGill in late January of 1998 while the PCRA Petition was pending, diagnosed McGill with organic brain damage, chronic schizophrenia, and explained that "substantial mental health mitigating evidence could have been presented to the jury at the time of [McGill's] capital proceedings." Affidavit of Dr. Krop at 5.[16]

Because the PCRA court did not conduct a hearing on this issue and dismissed the claim without considering the affidavits and medical records, we do not have enough of a record on which to assess adequately the determination of the PCRA court. Rather than ruling on this issue at this time, the more jurisprudentially sound result, which we now abide, is to vacate that portion of the Order of the PCRA court dismissing this particular claim and remand the matter, limited to this issue, to the PCRA court.[17]

**16.** Dr. Krop, in his affidavit, states as follows: "I understand that the lawyer who represented [McGill] at his trial and capital sentencing has stated his belief that a "malingering" diagnosis in [McGill's] records meant that [McGill] was "faking" mental illness." Affidavit of Dr. Krop at 6. While this statement may indicate the basis of trial counsel's inaction on this issue, without an affidavit or testimony from trial counsel, we cannot conclude whether trial counsel in fact had a reasonable basis for not presenting mental health evidence in mitigation.

**17.** We do not overlook that, pursuant to Pa.R.Crim.P. 909(B)(2)(a), the PCRA court should also have afforded reasonably specific pre-dismissal notice with regard to this claim. *See generally Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 526–527 (2001).

## CONCLUSION

The PCRA court in the present case reviewed the performance of trial counsel, so a remand to allow McGill to properly plead and argue his claim of layered ineffectiveness would be futile. The PCRA court properly dismissed the PCRA Petition of McGill in all but one respect—on these claims, we affirm the Order of the PCRA court. However, on the final claim, that trial counsel was ineffective for failing to investigate fully and present mitigating mental health evidence, we cannot adequately review the propriety of the Order of the PCRA court because the PCRA court mischaracterized the record as being devoid of any evidence to support McGill's contention. Accordingly, we vacate the Order of the PCRA court to the extent that it dismissed this claim of McGill. We remand the matter to the PCRA court to consider the affidavits and medical records McGill submitted to the PCRA court in February of 1998.