J-S13005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN TIELSCH | |
| Appellant | No. 1912 WDA 2012 |

Appeal from the PCRA Order November 16, 2012
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0003990-2000

BEFORE:  PANELLA, J., MUNDY, J., and STABILE, J.

MEMORANDUM BY PANELLA, J.                    **FILED MAY 15, 2015**

Appellant, Steven Tielsch, appeals from the order entered on November 16, 2012, in the Court of Common Pleas of Allegheny County, which denied his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

As we write primarily for the parties, who are familiar with the factual context and legal history of this case, we set forth only so much of the facts and procedural history as is necessary to our analysis.

> On April 17, 1986, Tielsch and Kevin Ohm were driving around the Squirrel Hill section of Pittsburgh in a black Corvette. At approximately 9:15 p.m., the victim, Neil S. Rosenbaum, a rabbinical student from Canada, was walking toward the intersection of Phillips and Pittcock Avenues when Tielsch and Ohm pulled up in the Corvette. The pair asked the victim for directions. As the victim approached the vehicle, Tielsch opened fire and shot the victim four to five times. Immediately after the shooting, Tielsch and Ohm drove off. Shortly thereafter, before

he passed away, the victim told Officer Albert Stegena that a black Corvette had pulled up to him and that two white males had been in the vehicle.

The victim had bullet wounds to his chest, right elbow, right buttock, left buttock, and right wrist. Leon Rozin, M.D., the chief forensic pathologist for Allegheny County, testified that it was possible that the bullet which entered the victim's chest also caused the wound to the elbow. *See* *N.T.,* Trial 4, 9/4/02, at 218–219.

Although an intensive investigation took place, little was learned as to the killer's identity until early 1988 when representatives from the District Attorney's Office and the local police department met with Sanford Gordon. Gordon told the police that Tielsch had bragged about the killing while the two had been housed at the Allegheny County Jail.

Additional evidence came to the Commonwealth's attention through Michael Starr. While Starr was under federal indictment, he related to the authorities that he was involved in an incident in the summer of 1991. Starr had been at a nightclub in the Strip District of Pittsburgh when he got into an altercation with Tielsch. According to Starr, Tielsch eventually pulled his jacket to the side and exposed the butt of a gun to Starr, and said: "I wacked some Jew f—k and I would have no trouble doing you too."

Tielsch was subsequently arrested for the victim's murder on February 17, 2000. On January 23, 2001, the first jury trial commenced. On February 13, 2001, the jury informed the trial court that it was hopelessly deadlocked; a mistrial was eventually declared. On November 26, 2001, the second jury trial began, but again the result was a mistrial due to a deadlocked jury. On May 13, 2002, the third jury trial began, but once again, the jury informed the trial court that it was deadlocked without hope for a unanimous verdict.

As stated above, this appeal is a result of the fourth jury trial, which began on August 27, 2002, and ended on September 13, 2002, when the jury returned its verdict finding Tielsch guilty of third-degree murder.

> Following his conviction at the fourth trial, Tielsch was sentenced, on November 13, 2002, to a term of imprisonment of ten to twenty years on the conviction for third-degree murder.

*Commonwealth v. Tielsch*, 934 A.2d 81, 83-84 (Pa. Super. 2007) (Panella, J.) (footnotes omitted).

This Court affirmed Tielsch's judgment of sentence. The Pennsylvania Supreme Court denied an appeal; the United States Supreme Court denied *certiorari*. Tielsch filed a timely *pro se* PCRA petition. The PCRA court appointed counsel who later withdrew and the PCRA court appointed Patrick Kenneth Nightingale, Esquire. Tielsch then filed, *pro se*, an "addendum" to his PCRA petition and then shortly thereafter another *pro se* amended petition. On September 23, 2011, counsel filed an amended PCRA petition and on January 25, 2012, filed a supplement to the petition. The PCRA court dismissed the petition without a hearing. This timely appeal followed.

This case has been in this Court for some time. Tielsch's relationship with his initial collateral appellate attorney, Patrick Kenneth Nightingale, Esquire, disintegrated and on March 11, 2014, this Court remanded the matter to the PCRA court for a determination of whether Tielsch was entitled to the appointment of new counsel. Prior to that there was a delay in receiving the record from the PCRA court and each side made requests for extensions of time in which to file briefs, which were granted.

On April 25, 2014, Robert E. Mielnicki, Esquire, entered his appearance on Tielsch's behalf. The panel granted two applications for extension of time

for Attorney Mielnicki to file a brief, which he filed on July 28, 2014—91 days after entering his appearance in this Court. The brief raises 32 issues[1] and is 85 pages. The day after filing the brief, Attorney Mielnicki filed an application to amend the brief. The panel granted that request by order entered on August 25, 2014, and directed counsel to file a new brief by September 22, 2014.

The panel also offered advice. We noted, "[t]he grant of Appellant's motion should in no way be construed as permission to expand either the length of the brief or the number of issues. The grant is to prune not to enlarge." Order, 8/25/14. We also reminded counsel that "selecting the few most important issues succinctly stated presents the greatest likelihood of success." *Id*. (citation omitted). And we "strongly advise[d]" counsel to review certain Rules of Appellate Procedure prior to filing the amended brief. *Id*.

Counsel took none of the advice. Instead, Attorney Mielnicki filed a letter, in which he notes that "[i]n light of the cautionary language and/or advisory language contained in the order" he "decided not to file such [i.e., an amended brief]." Letter, 9/23/14. He then explains, "given the time he had to write" the brief, and the fact that he typed it himself, that it contains "a few typographical errors." *Id*. It is interesting to consider that had

_____

[1] The brief identifies 33 issues, but omits issue ten.

Attorney Mielnicki decided to file an amended brief on September 22, 2014, that would have been 147 days since he entered his appearance in this Court and 56 days after the filing of his brief.

Preliminarily, we must comment on the brief. As noted, the brief raises 32 issues and is 85 pages. It contains, by Attorney Mielnicki's admission, typographical errors. He is correct; it does. As we warned counsel in our order, length in a brief does not necessarily correlate to effective advocacy. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983). "Most cases present only one, two, or three significant questions[.]" *Id*., at 752 (citation omitted). *See also* 20A West's Pa. Prac., Appellate Practice § 2135:4.

Attorney Mielnicki failed to comply with Rule 2135 of the Rules of Appellate Procedure. *See generally Commonwealth v. Spuck*, 86 A.3d 870, 872-874 (Pa. Super. 2014). That rule provides that a principal brief is limited to 14,000 words and that "[a] party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages…." Pa.R.A.P. 2135(a). We caution counsel that this Court can dismiss an appeal for failure to comply with our Rules of Appellate Procedure. *See* Pa.R.A.P. 2101.

Before we proceed to the merits, we can summarily dispose of numerous issues. In the very first issue, Attorney Mielnicki explains why the issue fails. *See* Appellant's Brief, at 32-34. There are many other issues that we can immediately find waived as Attorney Mielnicki explicitly identifies them as meritless or they are completely undeveloped and serve merely to identify an issue. We are puzzled as to why these issues are even in the brief. *See* Pa.R.A.P. 2119(a) (each point treated in an argument must be "followed by such discussion and citation of authorities as are deemed pertinent"); *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). The issues are 5, 12-19, 21-24, 26-27, 29-30, 32-33. *See* Appellant's Brief, at 61, 72-75, 77-78, 82-85.

There seems to be some confusion on Tielsch's behalf as to whether this case requires layered ineffectiveness claims. *See* Appellant's Brief, at 28-29. Tielsch filed his direct appeal on December 12, 2002, just before our Supreme Court's decision in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), which held that as a general rule claims of ineffective assistance of counsel should be deferred until collateral review. The amended PCRA petition filed by counsel and the PCRA court both treated the case as

- 6 -

presenting layered ineffectiveness claims. In other words, pre-**Grant**. We shall do the same.

Tielsch may not now raise and prevail on a claim of his trial counsel's ineffectiveness. Pursuant to the PCRA, once his counsel on direct appeal failed to raise the issue of trial counsel's ineffectiveness, any claim of trial counsel's ineffectiveness was waived. **See Commonwealth v. McGill**, 832 A.2d 1014, 1021 (Pa. 2003). The only claim of counsel ineffectiveness Tielsch can presently raise is that of his counsel on direct appeal for failing to claim that trial counsel was ineffective. **See id**. This type of claim is known as a "layered ineffectiveness" claim. **Id**., at 1022.

To preserve and prevail on a layered ineffectivenss claim, a petitioner must have first pled in his petition that counsel on direct appeal was ineffective for failing to allege trial counsel's ineffectiveness. **See id**. The PCRA petitioner must then present argument on each prong of the **Pierce**[2] test with respect to appellate counsel. **See id**. In other words, in order to establish that appellate counsel was ineffective for failing to allege that trial counsel was ineffective, the following elements must be proven: "(1) the underlying claim of trial counsel's ineffectiveness has arguable merit; (2) appellate counsel had no reasonable basis for failing to pursue the claim; and (3) but for appellate counsel's ineffectiveness, the result on direct

_____

[2] **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987).

appeal would have differed." ***Commonwealth v. Lopez***, 854 A.2d 465, 469 (Pa. 2004).

We first direct our attention to the performance of trial counsel because

> [a]n assessment of this prong requires appellant to establish each ***Pierce*** prong with respect to trial counsel's performance; failure to establish any one of the prongs will defeat the entire claim. ***Commonwealth v. Basemore***, 560 Pa. 258, 744 A.2d 717, 738 n. 23 (2000) (citing ***Commonwealth v. Rollin***, 558 Pa. 532, 738 A.2d 435, 441 (1999)). This "merit" prong has been referred to as containing a "nested" argument—trial counsel's performance must be addressed in order to determine whether appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness.

***Id***., at 469 n.5.  Thus, an appellant must present argument on the following elements:  (1) arguable merit to the underlying legal issue that is the basis of the contention that trial counsel is ineffective; (2) trial counsel had no reasonable basis for acting or failing to act; and (3) the defendant was prejudiced by the action or omission of trial counsel.  ***See McGill***, 832 A.2d at 1022-1023.

If an appellant fails to establish any of the ***Pierce*** prongs as to trial counsel's performance, the *entire* claim fails.  ***Lopez***, 854 A.2d at 469 n.5; ***see also***, ***McGill***, 832 A.2d at 1023 ("Only if all three prongs as to the claim of trial counsel's ineffectiveness are established, do prongs 2 and 3 of the ***Pierce***  test as to the claim of appellate counsel's ineffectiveness have relevance….").  We proceed to the merits.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." **Commonwealth v. Edmiston**, 65 A.3d 339, 345 (Pa. 2013) (citation omitted), *cert. denied*, **Edmiston v. Pennsylvania**, 134 S. Ct. 639 (2013).

Tielsch first maintains that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to move to suppress Tielsch's statements made to law enforcement after his illegal arrest.

The affidavit of probable cause set forth that Tielsch admitted to two witnesses that he was the shooter. One of these witnesses, not identified by name in the affidavit, was Darrin Razimczyk. The affidavit also set forth that the witnesses would testify at the coroner's inquest. At the coroner's inquest, however, Razimczyk did not testify, claiming the Fifth Amendment privilege against self-incrimination.

Tielsch contends that trial counsel was ineffective for failing to seek suppression of his post-arrest statements based on Razimczyk's refusal to testify—that the refusal to testify rendered the arrest made without probable cause. **See** Appellant's Brief, at 36 ¶¶ 53-54. Tielsch also argues that the Commonwealth was in possession of evidence that directly contradicted Razimczyk's statement, but that the Commonwealth "sought an arrest warrant it knew that or most certainly should have known the information in the arrest warrant" was false. **Id**., at 37 ¶ 58.

As for the evidence in the Commonwealth's possession that contradicted the affidavit, Tielsch offers nothing but conjecture. He cites no evidence—or to anything at all—to support this claim. It is simply his bald statement. That is simply not enough to sustain this claim.

His claim that the affidavit is invalid given the later refusal to testify is unsupported by citation to any legal authority. Accordingly, we find this claim waived. *See Commonwealth v. Williams*, 959 A.2d 1252, 1258 (Pa. Super. 2008); Pa.R.A.P. 2119(a). We refuse to develop Tielsch's claims for him.

Tielsch next contends that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to call a forensic expert in the field of tool mark identification. At trial, the Commonwealth called an expert to testify that the weapon found was the weapon used to kill the victim and that the barrel of the gun had been changed. Tielsch maintains that "[a]n expert who could have challenged the manner the Commonwealth determined that the gun found in 1996 was the gun used to Kill Rosenbaum, through tool mark analysis or identification, would have hampered part of the Commonwealth's case." Appellant's Brief, at 41.

To succeed on a claim of counsel's ineffectiveness for failure to call a witness

> a petitioner must prove that "the witness [ ] existed, the witness [was] ready and willing to testify, and the absence of the witness ['] testimony prejudiced petitioner and denied him a fair trial."
> In particular, when challenging trial counsel's failure to produce

expert testimony, "the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence."

***Commonwealth v. Luster***, 71 A.3d 1029, 1047 (Pa. Super. 2013) (en banc) (citations omitted; brackets in original).

Here, Tielsch has completely failed to identify an expert witness who was willing to testify at trial.[3] Therefore, this claim fails.

In his next claim, Tielsch claims that trial counsel was ineffective for failing to call certain witnesses. ***See*** Appellant's Brief, at 47. Again, Tielsch cannot succeed merely on a claim of trial counsel's ineffectiveness. ***See McGill***, 832 A.2d at 1021. Unlike his prior claim, however, Tielsch has identified numerous witnesses. ***See*** Appellant's Brief, at 49-58.

There are two requirements to sustain this claim. The first is procedural. To be eligible for an evidentiary hearing on a claim of ineffective assistance for failing to call a witness a petitioner must include in his petition "a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony." ***Commonwealth v. Reid***, 99 A.3d 427, 438 (Pa. 2014) (citations omitted). The second requirement is substantive. Namely,

> a petitioner must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed or should have

_____

[3] The PCRA court notes that trial counsel attempted to locate an expert witness to contradict the Commonwealth's expert witness, but was unable to find one. ***See*** PCRA Court Opinion, 5/2/13, at 4.

- 11 -

known of the existence of the witness; (4) the witness was prepared to cooperate and would have testified on defendant's behalf; and (5) the absence of such testimony prejudiced him and denied him a fair trial.

*Id*. (citation omitted).

As noted, there are numerous potential witnesses listed in the brief. Tielsch fails to claim, among other things, that any of these witnesses were available to testify at trial. There is only one witness for whom counsel provided a signed certification. Counsel signed a certification for James Wymard, Esquire. In the signed certification, counsel notes that Attorney Wymard informed him that he "did not move to suppress an arrest warrant" and "did not follow up with any 'investigation' relative to the PennDOT records because I was no longer counsel for Mr. Tielsch[,]" but that he "did … build a record with the trial court setting forth allegations of prosecutorial misconduct." Certified Statement of James Wymard, Esquire, filed 11/21/11, at ¶¶ 4-5. In his brief, Tielsch focuses exclusively on Attorney Wymard's potential testimony in relation to the informant, Sanford Gordon— a subject not even mentioned in the signed certification. **See** Appellant's Brief, at 55 ¶ k. Given the procedural and substantive deficiencies mentioned above, this claim fails.[4]

_____

[4] Also in this claim, Tielsch "again reminds" us of the "Tielsch To Do Notes" appended to his amended petition and notes that counsel was ineffective for investigating the items listed therein. Appellant's Brief, at 60. That is the substance of the argument. The "Tielsch To Do Notes" are 76 handwritten
*(Footnote Continued Next Page)*

In issue 31, Tielsch raises another claim of ineffective assistance for failing to call a witness. He argues that trial counsel was ineffective for failing to have Chris Conrad, Esquire, testify about how the Commonwealth misplaced documents. According to Tielsch, Conrad is the assistant district attorney who handled the case until 1999. Again, Tielsch cannot succeed merely on claims of trial counsel's ineffectiveness. *See McGill*, 832 A.2d at 1021. In any event, this claim fails procedurally and substantively. There is no signed certification regarding this witness and no claim that counsel knew of this witness or that the witness was available to testify.

Tielsch next claims that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for advising him not to testify on his own behalf. To prevail on this claim, Tielsch "must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Commonwealth v. Alderman*, 811 A.2d 592, 596 (Pa. Super. 2002) (citation omitted).

At trial, the trial court informed Tielsch that he had "a constitutional right to testify [o]n your own behalf regardless of your lawyer's advice. If you were to choose, you would have the absolute right. You are aware of that." N.T., Trial 4, at 945-946. Tielsch answered, "[y]es" and declined to

*(Footnote Continued)* ───────────────

items, spanning ten pages. We decline to develop this claim for Tielsch; it is waived.

testify. *Id*., at 946. The trial court then informed Tielsch that the decision "whether to forego your right to testify is one that you feel is in your best interest and after consultation with Mr. Diefenderfer, you are making your decision knowingly, intelligently and voluntarily?" *Id*. Tielsch answered, "[y]es." *Id*. The trial court then asked if trial counsel "hasn't promised you anything or forced you or no one else has forced you to give up your right?" *Id*. Tielsch answered, "[n]o." *Id*. Accordingly, based on Tielsch's own admissions at trial, there is no evidence that trial counsel interfered with Tielsch's right to testify on his own behalf.

Alternatively, we must inquire whether counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf. Tielsch explains that Attorney Diefenderfer advised him not to testify on his own behalf as it would open the door to his federal conviction and the circumstances surrounding Kevin Ohm's death. *See* Appellant's Brief, at 61-62. Taking Tielsch's explanation as true, counsel's advice is reasonable; we fail to see how it vitiates a knowing and intelligent decision to testify on his own behalf.

In any event, Tielsch notes baldly that he would have simply claimed he did not commit the crime and that he would have "provide[d] testimony to directly contradict Mr. Gordon's claims that Appellant made inculpatory statements to him in 1987." Appellant's Brief, at 62. But he does not offer any further details. *See Alderman*, 81 A.2d at 596 (rejecting claim where

- 14 -

appellant baldly stated that he would have refuted the charges, but failed to indicate precisely how he would have done so). Accordingly, this claim fails.

Tielsch next argues that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to investigate "Exhibit 31" presented at his first trial. The first trial ended in a mistrial when the jury declared they were hopelessly deadlocked. We explained the circumstances underlying Exhibit 31 on direct appeal as follows.

> At the first trial, the Commonwealth introduced Exhibit 31, a certified copy of the title history of a 1977 Corvette, which indicated that the vehicle had been first titled in Pennsylvania on May 5, 1977, and registered to Tielsch, and that the registration had expired on April 30, 1986. During the Commonwealth's closing argument, the prosecutor told the jury that Exhibit 31 indicated that Tielsch's uncle, Francis Tielsch, an insurance agent, had the Corvette destroyed in 1998, thus evidencing actions taken to hide Tielsch's guilt. In so informing the jury, the prosecutor relied not on the actual exhibit, but a loose-leaf copy from a detective's file. It turned out that the page the prosecutor relied on was from another unrelated report. The prosecutor accordingly admitted his error after the mistake was discovered.

> After Tielsch's motion for a mistrial was denied, the trial court appropriately provided a curative instruction to the jury telling them that "the parties agree that the insurance claim referred on that page of Exhibit 31 was actually made by Francis T. Tielsch on a Chrysler automobile" and to disregard the Commonwealth's comment that Tielsch's uncle had disposed of the vehicle. N.T., Trial 1, at 1842.

> As Tielsch acknowledges in his brief, the prosecutor "claimed that he made an honest mistake due to confusion by a missing page in Exhibit 31." Appellant's Brief, at 77. Tielsch maintains, however, that the aforementioned conduct requires a new trial "as an experienced prosecutor ... knows" that the Vehicle Code requires that "the defendant would have had to put the title for the Corvette into his uncle's name or a salvor's name," in order for Tielsch's uncle to have arranged for the car to be destroyed.

- 15 -

Appellant's Brief, at 77–78. Tielsch also notes that Francis Tielsch had been contacted by police investigators two times before the prosecutor made his final argument and had informed the police that he had not made a claim, nor had any claim been filed through his agency, for the Corvette.[FN8] *See id.,* at 77. In addition, Tielsch contends that the veteran prosecutor "knew *or should have known* that he could not utilize the loose leaf papers from a detective's file...." Reply Brief, at 1 (emphasis added).

FN8. Tielsch seems to concede that the prosecutor was unaware of the police investigators' activity with regards to Francis Tielsch. *See* Appellant's Brief, at 22–23. In short, Tielsch does not claim that at trial the Commonwealth was aware of Francis Tielsch's statements to the police investigators.

The record simply does not support Tielsch's contention that the Commonwealth acted *intentionally* in describing Exhibit 31 to prejudice Tielsch. *See Smith,* 532 Pa. at 186, 615 A.2d at 325 (holding that the double jeopardy clause bars retrial when the Commonwealth "intentionally undertake[s] to prejudice the defendant to the point of the denial of a fair trial."). Although the prosecutor was mistaken in his assertion, there is absolutely no evidence of a deliberate misstatement. Tielsch's unsupported theory is insufficient to show a deliberate trial tactic adopted by the prosecutor. As such, Tielsch's claim fails. *See, e.g., Commonwealth v. Simmons,* 541 Pa. 211, 248, 662 A.2d 621, 639 (1995) (finding no prosecutorial misconduct where evidence did not show that misstatement of fact was deliberate); [FN9] *Commonwealth v. Brown,* 489 Pa. 285, 298–299, 414 A.2d 70, 77 (1980) (misstatement of fact by prosecutor in closing did not constitute error or warrant a new trial because evidence did not show that misstatement was deliberately done). Because we find no suggestion that the Commonwealth deliberately undertook trial strategies to prejudice Tielsch, we cannot conclude that any double jeopardy violation occurred in this regard.

FN9. In his statement of the question presented, Tielsch claims that this "misconduct ... continued through all four trials...." Appellant's Brief, at 3. Tielsch, however, provides no citation to the notes of testimony where this alleged misconduct occurred in the other trials. Accordingly, there is no evidence of prohibited prosecutorial overreaching

> "designed to harass the defendant through successive prosecutions...." ***Commonwealth v. Martorano***, 559 Pa. 533, 538, 741 A.2d 1221, 1223 (1999).

***Tielsch***, 934 A.2d at 85-86.

Tielsch raises this issue on collateral review as trial counsel's failure to properly investigate alleged prosecutorial misconduct occurring during the first trial. ***See*** Appellant's Brief, at 66 ("The fact is that ADA Fitzsimmons introduced a 'bogus' document to the court. … There is a clear indication that prosecutorial misconduct may have occurred here."). The resolution of this issue on direct appeal, however, refutes this claim. Tielsch is simply trying to relitigate a claim that he lost on direct appeal.

Tielsch next contends that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to properly litigate the issue of ADA Fitzsimmons's prosecutorial misconduct. The alleged prosecutorial misconduct is the Commonwealth's "efforts to present evidence that Appellant's license was suspended on the day of the Rosenbaum murder and the day Trooper Wiles stopped Appellant's car when Appellant had a valid license." Appellant's Brief, at 69-70.

There are numerous problems with Tielsch's convoluted argument. Among the most egregious is that Tielsch never argues how this alleged misconduct prejudiced him. He also notes that "[t]he issue of whether this was prosecutorial misconduct … was addressed in Appellant's direct appeal."

Appellant's Brief, at 69. On direct appeal, the panel found this claim had no merit. ***See Tielsch***, 934 A.2d at 85 n.7. This claim fails.

In his next two issues, issues 9 and 11, Tielsch argues trial counsel's ineffectiveness. Again, Tielsch cannot succeed on claims of trial counsel's ineffectiveness. ***See McGill***, 832 A.2d at 1021. In any event, at the time Tielsch filed this petition he had counsel. The *pro se* filing is nothing more than an unauthorized supplemental petition. We find the claims alleged therein waived. ***See Commonwealth v. Reid***, 99 A.3d 427, 437 (Pa. 2014).

Tielsch next maintains that he is entitled to relief based on the "cumulative prejudice established by all other claims." Appellant's Brief, at 75. Tielsch notes that this claim was raised in his *pro se* amended PCRA petition. At the time Tielsch filed this petition he had counsel. The *pro se* filing is nothing more than an unauthorized supplemental petition. We find the claim raised therein waived. ***See Reid***, 99 A.3d at 437. Tielsch also raises a claim in issue 28 that he only raised in his *pro se* amended PCRA petition. That claim is also waived. ***See id***.

Tielsch next claims that appellate counsel was ineffective for failing to raise on appeal that Charles Musselwhite's excluded statement was admissible under the excited utterance exception to the hearsay rule. Tielsch fails to cite any pertinent legal authority to support this claim.

Accordingly, we find the issue waived. **_See Williams_**, 959 A.2d at 1258;

Pa.R.A.P. 2119(a).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2015