J-S91043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| GARY ADAM MILLER | : | |
| Appellant | : | No. 932 MDA 2015 |

Appeal from the Order Entered May 4, 2015
In the Court of Common Pleas of Perry County
Criminal Division at No(s): CP-50-MD-0000008-2001

BEFORE: FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS[*], P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED JANUARY 10, 2017**

Appellant Gary Adam Miller appeals from the order entered in the Court of Common Pleas of Perry County denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Miller's court-appointed PCRA counsel has filed a petition to withdraw his representation, along with an "***Anders*** brief."[1] We grant PCRA counsel's petition to withdraw his representation and affirm the PCRA court's order.

_____

[1] Counsel filed a brief pursuant to ***Anders v. California***, 386 U.S. 738, 87 S.Ct. 1396 (1967), apparently in the mistaken belief that an ***Anders*** brief is required where counsel seeks to withdraw on appeal from the denial of PCRA relief. A ***Turner/Finley*** "no-merit" letter, however, is the appropriate filing. ***See Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). However, since an ***Anders*** brief provides greater protection to a defendant,
*(Footnote Continued Next Page)*

* Former Justice specially assigned to the Superior Court.

Previously, on direct appeal, this Court set forth, in relevant part, the facts underlying this case as follows:

> According to the affidavit of probable cause, the charges against Miller arose out of a home invasion burglary perpetrated by Miller and Rodney Bible during the early morning hours of December 22, 2000. On that date, Trooper James E. Albert of the Pennsylvania State Police responded to a 911 call at the home of J.H., his wife, A.H., and their five minor children. At the scene, J.H. told Trooper Albert that he had been awakened by his wife telling him that there were two men in their bedroom. J.H. recognized Bible, but did not know Miller, whom Bible called "Alex" during the course of the incident.
>
> J.H. related that Bible was holding the couple's nine-year-old son, who had been stripped naked, with a knife at his throat. Bible then ordered J.H. to leave the bedroom, go downstairs to the kitchen, and tell Miller where the family kept their money. After showing Miller where the money (approximately $527) was kept, Miller took J.H. to the garage at knife point and tied him with a garden hose and bailing twine. Miller then asked J.H. for the keys to the family's van and demanded that J.H. tell him where the family kept duct tape so that Miller and Bible could use it to bind and gag the other members of the family. Fearing for the safety of his family if he refused, J.H. complied and Miller left. After approximately five minutes, J.H. was able to free himself and flee to a barn where he called 911.
>
> A.H. told Trooper Albert that she observed Bible bind and gag four of the couple's children with duct tape. She also stated that she had been forced to write a check for the remainder of the money in the family's checking account to give to Miller.
>
> The couple's daughter, E.H., told Trooper Albert that while her mother was with Miller, Bible sexually assaulted one of the children, S.H., a six-year-old girl, and urinated on her before

_(Footnote Continued)_ _____

this Court may accept an ***Anders*** brief in lieu of a ***Turner/Finley*** letter. ***See Commonwealth v. Fusselman***, 866 A.2d 1109, 1111 n.3 (Pa.Super. 2004).

binding and gagging her. Bible then removed S.H. from the family's residence in their van.[2]

Soon after Miller and Bible left the home in the family's van, they encountered two troopers who were responding to the 911 call, who pursued the van. At one point the van stopped and the troopers left their vehicle. The van was then driven in reverse into the patrol car, causing the door of the patrol car to strike one of the troopers and knock him to the ground. In response, the troopers fired their weapons in an effort to stop the van. The van sped away and another pursuit ensued. The chase ended when the van left the roadway and struck an open foundation, causing the kidnapped victim, S.H., to suffer a broken arm.

Trooper Albert interviewed Miller at a hospital where he had been taken following the incident. During that interview, Miller confessed to his involvement in the events described above and explained that he had met Bible at a homeless shelter.

*Commonwealth v. Miller*, No. 1182 MDA 2001, at 1-3 (Pa.Super. filed

4/24/02) (unpublished memorandum) (footnote in original).

Represented by Kevin Prosser, Esquire of the Public Defender's Office,

Miller entered into a negotiated guilty plea to three counts of robbery; one

count of conspiracy to commit robbery; one count of robbery of a motor

vehicle; one count of burglary; one count of kidnapping; one count of

interference with the custody of children; one count of theft by unlawful

taking; three counts of terroristic threats; and two counts of unlawful

---

[2] Bible later confessed that he had sexually assaulted another of the children, four-year-old daughter R.H., as well.

restraint.[3]  As part of the negotiated guilty plea agreement, Miller agreed to the imposition of a sentence of twenty to forty years in prison, and the Commonwealth agreed to *nol pros* the remaining charges against Miller.[4]

At the June 15, 2001, oral guilty plea colloquy, which referenced the written guilty plea, Miller requested a pre-sentence investigation. Accordingly, sentencing was deferred until July 12, 2001, at which time, and after review of the pre-sentence investigation report, the trial court sentenced Miller in accordance with the plea agreement to an aggregate term of twenty to forty years in prison.

Miller filed a timely direct appeal, and represented by new privately-retained counsel, William Costopoulos, Esquire, he presented a single claim: guilty plea counsel was ineffective for failing to object to the defective guilty plea colloquy and/or in failing to move to withdraw the guilty plea since it was entered by Miller in an unknowing and involuntary manner.  Upon review, this Court concluded Miller's guilty plea colloquy was not defective, and consequently, he voluntarily, knowingly, and understandingly tendered his guilty plea.  ***See id.***  Thus, his ineffective assistance of guilty plea

---

[3] 18 Pa.C.S.A. §§ 3701, 903, 3702, 3502, 2901, 2904, 3921, 2706, and 2902 respectively.

[4] Those charges were four additional counts of robbery, four additional counts of terroristic threats, and five additional counts of unlawful restraint.

counsel claim failed,[5] and we affirmed his judgment of sentence on April 24, 2002. Miller filed a petition for allowance of appeal, which our Supreme Court denied on September 24, 2002. *See Commonwealth v. Miller*, 397 MAL 2002 (Pa. filed 9/24/02) (*per curiam* order). Miller did not seek *certiorari* with the United States Supreme Court.

On or about October 23, 2003, Miller filed a *pro se* timely, first PCRA petition, and by order entered on January 19, 2011,[6] the PCRA court directed that the Public Defender's Office was appointed to represent Miller. On February 11, 2011, Public Defender Sean Potter, Esquire entered his appearance on behalf of Miller; however, on April 11, 2011, Attorney Potter filed a motion to withdraw as counsel on the basis Miller would not cooperate with him and had threatened to file a civil lawsuit against him. By order entered on April 14, 2011, the PCRA court granted Attorney Potter's motion to withdraw and appointed Ralph Germak, Esquire to represent Miller.

On September 30, 2011, Attorney Germak filed an amended PCRA petition on behalf of Miller, and the matter proceeded to a multi-day PCRA

---

[5] As more fully discussed *infra*, our Supreme Court held in the seminal case of **Commonwealth v. Grant**, 572 Pa. 48, 813 A.2d 726 (2002), that all claims of guilty plea counsel's ineffectiveness raised on direct appeal must be deferred to consideration under the PCRA. However, Miller's direct appeal pre-dated **Grant**, and thus, this Court addressed his ineffectiveness claim under the pre-**Grant** framework.

[6] The record is not clear as to the reasons for the delay in the appointment of counsel.

evidentiary hearing, commencing on October 11, 2011. After the conclusion of the initial hearings, and prior to issuing a ruling, the PCRA court filed an order on January 28, 2013, indicating it would permit Miller to present additional medical/psychiatric evidence and testimony related to his retrospective competency to stand trial issues.

On March 14, 2013, Attorney Germak filed a motion to withdraw his representation on health basis, and following the grant of this motion, on May 3, 2013, the PCRA court appointed William Shreve, Esquire to represent Miller. On May 28, 2014, the PCRA court held an additional PCRA evidentiary hearing, and by order entered on May 4, 2015, the PCRA court entered an order denying Miller's PCRA petition. This timely, counseled appeal followed. By order filed on June 4, 2015, the PCRA court directed Miller to file a Pa.R.A.P. 1925(b) statement,[7] and on June 29, 2015, counsel filed on behalf of Miller a statement in which he presented six issues. The PCRA court filed a detailed responsive Pa.R.A.P. 1925(a) opinion on January 8, 2016. Subsequently, as indicated *supra*, PCRA counsel filed in this Court a petition to withdraw his representation and ***Anders*** brief.

Preliminarily, we note that "[o]ur standard of review of the denial of PCRA relief is clear; we are limited to determining whether the PCRA court's findings are supported by the record and without legal error."

---

[7] In its order, the PCRA court specifically indicated Miller had twenty-five days to file a Pa.R.A.P. 1925(b) statement.

*Commonwealth v. Wojtaszek*, 951 A.2d 1169, 1170 (Pa.Super. 2008) (quotation and quotation marks omitted).

Before we proceed to review the merits of the issues presented in PCRA counsel's *Anders* brief, we must determine whether counsel has satisfied certain procedural requirements to withdraw his representation.

> Counsel petitioning to withdraw from PCRA representation...must review the case zealously. [PCRA] counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> Where counsel submits a petition and no-merit letter that...satisfy the technical demands of *Turner/Finley*, the court—trial court or this Court—must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

*Commonwealth v. Walters*, 135 A.3d 589, 591 (Pa.Super. 2016) (quotations omitted).

Instantly, we determine that PCRA counsel has complied with the requirements of *Turner/Finley*. Specifically, PCRA counsel's *Anders* brief and petition to withdraw detail the nature and extent of PCRA counsel's review, address the claims raised in Miller's *pro se* PCRA petition and at the PCRA hearing, and determine that the issues lack merit. PCRA counsel

indicated that after his own independent review of the record, he could not identify any meritorious issues that he could raise on Miller's behalf. Counsel also attached proof that he sent Miller his petition to withdraw, along with his **Anders** brief, and instructed him that he had the right to retain private counsel or proceed *pro se*.[8] As counsel has complied with the technical **Turner/Finley** requirements to withdraw his representation, we must now conduct our independent review of the issues raised by counsel and determine whether the issues lack merit.[9] **See Walters**, **supra**.

Initially, we note that, on appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. **See Commonwealth v. Breakiron**, 566 Pa. 323, 781 A.2d 94 (2001). To be eligible for PCRA relief, the appellant must prove the issues raised have not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel." 42 Pa.C.S.A. §§ 9543(a)(3), (4). An issue has been previously litigated if the highest appellate court in which the petitioner was entitled to review as a matter of

---

[8] Miller has filed no response.

[9] Where appropriate for effective appellate review, we have consolidated and considered Miller's issues in an order different from the order presented in PCRA counsel's **Anders** brief.

right has ruled on the merits of the issue. ***Id.*** § 9544(a)(2); ***Commonwealth v. Crawley***, 541 Pa. 408, 663 A.2d 676, 678 (1995). A PCRA claim is waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b).

With regard to claims of ineffective assistance of counsel, we presume that counsel is effective. ***Commonwealth v. Rollins***, 558 Pa. 532, 738 A.2d 435, 441 (1999). To overcome this presumption, an appellant must establish three factors: (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. ***Commonwealth v. Travaglia***, 541 Pa. 108, 661 A.2d 352, 356 (1995). A claim of ineffectiveness may be denied by a showing that the appellant's evidence fails to meet any of these prongs. ***See id.***

In his first issue, Miller avers guilty plea counsel, Attorney Prosser, was ineffective for failing to adequately investigate the possibility of a duress defense. ***See*** PCRA Counsel's ***Anders*** brief at 9-10. Additionally, he avers direct appeal counsel, Attorney Costopoulos, was ineffective in failing to raise the issue of guilty plea counsel's ineffectiveness on direct appeal. ***See*** PCRA Counsel's ***Anders*** Brief at 10.

Initially, we are guided by the following:

> Although we have held that claims of [guilty plea] counsel's ineffectiveness raised for the first time on collateral

review will no longer be deemed waived, ***Commonwealth v. Grant***, 572 Pa. 48, 813 A.2d 726, 738 (2002), that holding does not apply here because [Miller's] direct appeal concluded prior to [December 31, 2002, which is the effective date of] ***Grant***. We will therefore analyze [Miller's] claims of ineffective assistance of counsel under the pre-***Grant*** framework, under which a petitioner cannot invoke substantive merits review of a waived claim of ineffective assistance of [guilty plea] counsel by simply appending a conclusory assertion that all intervening counsel were ineffective for failing to raise it. Rather, the only claim over which the PCRA court retains cognizance is that of appellate counsel's ineffectiveness. ***Commonwealth v. Rush***, 576 Pa. 3, 838 A.2d 651, 656 (2003). [Miller] must therefore present argument as to each layer of ineffectiveness, on all three prongs of the ineffectiveness standard. ***See Commonwealth v. McGill***, 574 Pa. 574, 832 A.2d 1014, 1022 (2003) ("[I]n order for a petitioner to properly raise and prevail on a layered ineffectiveness claim, he must plead, present, and prove" the ineffectiveness of appellate counsel.)[.] A layered claim of appellate counsel's ineffectiveness relates back to the actions of [guilty plea] counsel, so that the three prong test for [guilty plea] counsel's ineffectiveness, if satisfied, supplies the arguable merit prong of the claim of appellate counsel's ineffectiveness. ***Id.***

***Commonwealth v. Washington***, 592 Pa. 698, 713-14, 927 A.2d 586, 594-95 (2007) (citations and emphasis omitted).

In the instant case, Miller, whose direct appeal concluded prior to the effective date of ***Grant***, has waived the instant ineffective assistance of guilty plea counsel claim for failing to raise it on direct appeal. ***See Washington***, ***supra***. However, he has presented a "layered" claim of ineffectiveness, and, thus, we shall examine whether guilty plea counsel, Attorney Prosser, was ineffective as it relates to the arguable merit prong of the claim of appellate counsel's ineffectiveness. ***See id.***

During the PCRA evidentiary hearing, with regard to his investigation of the duress defense, Attorney Prosser testified, in relevant part, as follows:

> Every single thing was significant to me; and we investigated the duress defense through interviews, through reviewing the discovery, and by employing an expert who could explain to me how Mr. Miller could be under the influence of duress and still act in the way in which he apparently acted. So everything was important to me.

> \*\*\*

> [W]e left no stone unturned in attempting to---to posit a solid defense for [Miller].

N.T., 10/11/11, at 124.

Additionally, Attorney Prosser testified that he reviewed the statutory elements of duress with Miller "ad nauseam" and, had Miller chosen to proceed to trial, Attorney Prosser would have presented a duress defense. *Id.* at 125-28.

In finding no merit to Miller's claim that Attorney Prosser did not adequately investigate a duress defense, the PCRA court credited Attorney Prosser's testimony as was within its purview. PCRA Court Opinion, filed 1/8/16.[10] *See Commonwealth v. Spotz*, 624 Pa. 4, 84 A.3d 294 (2014). Accordingly, as Miller did not satisfy the necessary three prongs to establish guilty plea counsel's ineffectiveness, his derivative claim of appellate counsel's ineffectiveness must likewise fail. *See Rush*, *supra*.

---

[10] We note the PCRA court's opinion is not paginated.

Miller next suggests the PCRA court erred in concluding he was competent at the time he pled guilty in 2001.[11] In this regard, Miller suggests the PCRA court placed undue weight on the opinions of Dr. Stanley Schneider[12] and Dr. Arthur De Carle[13] as compared to the opinion of Dr.

_____

[11] Miller has not pointed to that place in the voluminous record where he presented a challenge to his competency in the trial court or on direct appeal. Generally, a substantive claim that is not raised at trial or on direct appeal is waived for PCRA purposes; however, the issue of whether a defendant was competent to stand trial is an exception to that rule. **See Commonwealth v. Brown**, 582 Pa. 461, 872 A.2d 1139 (2005).

[12] At the PCRA evidentiary hearing, Attorney Prosser testified that he hired a psychologist, Dr. Schneider, who evaluated Miller's competency to stand trial prior to Miller's entry of his guilty plea. N.T., 10/11/11, at 38, 43-44. In an April 3, 2001, letter, Dr. Schneider informed Attorney Prosser that Miller was competent. **Id.** at 46, 49. Attorney Prosser sent additional information to Dr. Schneider, and, in a May 7, 2001, letter, Dr. Schneider continued to opine that Miller was competent.

[13] Dr. De Carle testified he evaluated Miller on June 2, 2011, and he prepared a written evaluation on that day as to Miller's competency retrospective to 2000. N.T., 11/10/11, at 18. In his June 2, 2011, written evaluation, he opined that "there were significant deficiencies in [Miller's] competency to stand trial as well as his ability to understand the complete process...in 2001." **Id.** Dr. De Carle indicated that his opinion was based, in part, on information available to him that was referenced back to ten years. N.T., 5/4/12, at 20. He testified that, in his report, he "stated there was a limitation in terms of my evaluation when I met with [Miller] [in] that I didn't have a lot of objective information as to what his memory was like [at the time he pled guilty]." **Id.** at 23.
Following Dr. De Carle's PCRA testimony on direct-examination, the Commonwealth sent Dr. De Carle additional information, which had not been provided to him by Miller. **Id.** at 20-23, 28-29. On cross-examination, Dr. De Carle admitted the information altered his opinion in that "[i]t does become clear that [Miller's] ability to recall memories at [the point he pled guilty] was reasonably intact." **Id.** at 23. Also, he noted the additional information "helped to identify that [Miller] knew that Mr. Prosser was an
*(Footnote Continued Next Page)*

John Mitchell Hume.[14]  He also contends the PCRA court erred in determining

the documents upon which Dr. Hume relied in rendering his opinion were not

"validated" and in failing to find credible Dr. Hume's testimony.

Initially, we note that:

A defendant is presumed to be competent to stand trial.  Thus, the burden is on [an] [a]ppellant to prove, by a preponderance of the evidence, that he was incompetent to stand trial [or enter his guilty plea].  In order to prove that he was incompetent, [an] [a]ppellant must establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense.

**Commonwealth v. Brown**, 582 Pa. at 490-91, 872 A.2d at 1156 (citations

omitted).

<hr>

*(Footnote Continued)*

individual that was working on his behalf, that could help him[,] and [Miller] was able [ ] to convey what his wishes were through that person, Mr. Prosser."  **Id.** at 33.  Dr. De Carle admitted that the additional information clarified some missing points for him and provided evidence that Miller was competent to stand trial.  **Id.** at 35.

[14] Dr. Hume evaluated Miller on October 8, 2013.  N.T., 5/28/14, at 10, 18. He testified at the PCRA hearing that Miller told him he had been sexually abused as a child and, when Bible sodomized him, it brought back painful memories, leading Miller to be "reduced to following [Bible's] orders[.]"  **Id.** at 36.  Dr. Hume testified that he disagreed with Dr. Schneider's opinion that Miller was competent when he entered his guilty plea. **Id.** at 60.  Dr. Hume opined that Miller was "under the control of [Bible,]" and this altered his mental state.  **Id.** at 99.  Dr. Hume opined that Miller was not competent at the time he entered his guilty plea.  **Id.** at 105-09. Dr. Hume based his opinion, in part, on a document entitled "The Life of Gary Needham[.]"  **Id.** at 101-03.

The PCRA court heard extensive testimony on the issue of competency and concluded Miller did not satisfy this standard. More specifically, the PCRA court explained as follows:

> In a letter dated April 3, 2001, Dr. Schneider indicated that [Miller] was competent to stand trial. [N.T., 10/11/11, at 46.] Dr. Schneider was the medical professional that evaluated [Miller] closest in time to the incident while the other doctors evaluated [Miller] many years after the incident, which is one of the [main] reasons his testimony was given significant weight. The [PCRA] court ha[s] utilized Dr. Schneider numerous times before this case and it is reasonable for the [c]ourt to rely on his [opinions] regarding [Miller's] evaluation.
>
> After Dr. [De Carle's] initial evaluation of [Miller], which was ten years after [Miller's] plea, the Commonwealth provided Dr. [De Carle] with information that was not initially provided to him. [N.T., 5/4/12, at 20.] After reviewing these materials, which included reports from the time of the incident, it became clear to Dr. [De Carle] that [Miller's] ability to recall memories was reasonably intact. **Id.** at 23[.] It appears that [Miller] attempted to deceive the [PCRA] court by not supplying Dr. [De Carle] (Miller's own expert) with all of the pertinent documents. The [PCRA] court has found no reason to discredit the testimony of Dr. [De Carle], although he ultimately became unavailable for further proceedings after [Miller] attempted to sue him.
>
> The [PCRA] court allowed for the evaluation of [Miller] by Dr. Hume after two doctors had already deemed [Miller] competent during the time of the incident and during the adjudication of the case. Dr. Hume evaluated [Miller] many years after [Miller] had tendered the guilty plea and many of the documents that he relied upon for [Miller's] evaluation were not previously utilized during this case. Many of the materials are suspect.
>
> There is a particular piece of evidence that was concerning to the [PCRA] court: a document entitled "The Life of Gary Neeham," allegedly written by Jenny Landis Steward. Dr. Hume was not able to confirm who actually authored this document but gave weight to information within the writing regarding [Miller] being behind developmentally at a young age and being sexually

abused as a child. There were statements by several doctors within this piece of writing that are uncorroborated. [N.T., 5/28/14, at 120.]

During the cross-examination of Dr. Hume, it was confirmed that there is no evidence to establish that [Miller] was sexually assaulted during the night of the incident, although in a letter he wrote to the [PCRA] court, he claims that [Bible] sodomized him. The letter stated, "Without warning, he nailed me. I landed backwards very hard." District Attorney Chenot pointed out [this description] would not be consistent with the physics of sodomization. *Id.* at 127-30.

These types of inconsistencies within Dr. Hume's testimony are what led [the PCRA] court to the conclusion that some of the evidence Dr. Hume relied upon during his evaluation of [Miller] were not validated. This, along with the fact that the two previous doctors evaluated [Miller] much closer to the time of the incident, caused the [PCRA] court to place more weight on the testimony of Dr. Schneider and Dr. [De Carle].

*** 

[Moreover, in finding Miller to be competent, the PCRA court considered Miller's actions occurring prior to the entry of his guilty plea. For instance, Miller] consistently insisted that Attorney Prosser not share the witness statements with his mother, girlfriend, or psychologist. [N.T., 10/11/11,] at 37. This indicated to the [PCRA] court that [Miller] was competent enough to understand the severity of the crimes he committed[.] ...Furthermore, Attorney Prosser testified that [Miller] continuously suggested various theories as an attempt to prove his innocence. *Id.* at 38[.] [Miller] admits to preparing a letter that is referenced to as his duress defense that was given to Attorney Prosser around the time that they first met. [Miller] states that he gave this letter to his attorney to explain what happened the night of the incident in order [for] Attorney Prosser to help him with his case. *Id.* at 36[.] This is evidence that [Miller] was competent during the time that the guilty plea was entered because he was able to assist his counsel in his defense. Furthermore, Attorney Prosser asked [Miller] if he felt as if he was competent to stand trial and [Miller] answered in the affirmative. Attorney Prosser further clarified and asked [Miller] if he understood the charges against him[.] [Miller]

responded with "Yes, I definitely understand." [N.T., 5/4/12, at 29.]

PCRA Court Opinion, filed 1/8/16.

We find the PCRA court properly "concluded that [Miller] was able to consult with counsel rationally and possessed a rational and factual understanding of the proceedings." **Brown**, 582 Pa. at 491, 872 A.2d at 1157. The PCRA court properly considered testimony related to Miller's actions prior to the entry of his guilty plea. Further, the expert evidence relied upon by the PCRA court came from sources closer in time to Miller's plea and with greater opportunity to interact with and judge Miller's competence on that date. Miller essentially asks us to reweigh the evidence; however, this Court will not overturn a PCRA court's credibility determinations when, as here, there is evidence on the record to support those determinations. **Commonwealth v. Anderson**, 995 A.2d 1184 (Pa.Super. 2010).

Moreover, the record supports the PCRA court's conclusion that some of the evidence relied upon by Dr. Hume in rendering his opinion; namely, the document entitled "The Life of Gary Needham," which reported about Miller's alleged sexual abuse, was not "validated." Specifically, upon cross-examination at the PCRA hearing, Dr. Hume admitted there was no corroborating information supporting the assertions made in the document. N.T., 5/28/14, at 118. The PCRA court was free to assess and weigh these factors, and we find no error in this regard. **See Breakiron**, **supra**.

In his next claim, Miller alleges Attorney Costopoulos was ineffective in failing to raise on direct appeal the substantive issue of whether Miller was competent at the time he pled guilty. We agree with the PCRA court that Attorney Costopoulos was not ineffective in this regard.

As indicated *supra*, the PCRA court concluded that the evidence revealed Miller was competent when he entered his guilty plea, and thus, there was no arguable merit to Miller's underlying claim of incompetency. In rejecting Miller's ineffectiveness claim premised upon competency, the PCRA court concluded Attorney Costopoulos cannot be deemed ineffective in failing to raise on appeal a meritless claim. PCRA Court Opinion, filed 1/8/16. We find no error in this regard. ***See Breakiron***, ***supra***.

In his final claim, Miller suggests the PCRA court erred in finding Miller "failed to demonstrate that the underlying duress defense claim had arguable merit." PCRA Counsel's ***Anders*** Brief at 11. Specifically, Miller suggests that he told guilty plea counsel that "[Bible] accosted him at knife point while in Harrisburg and led him, at knife point, to the Mennonite home." ***Id.*** at 12 (citation to record omitted).

The issue of the defense of duress, and counsel's stewardship with regard thereto, is discussed extensively *supra*. In any event, as the PCRA court noted, even if Miller was initially accosted by Bible, "there is substantial proof that [Miller] exceeded what [Bible] required of him during the course of the incident and eventually became a willing participant."

- 17 -

PCRA Court Opinion, filed 1/8/16. We find no error in this regard. ***See***

***Breakiron***, ***supra***

We have conducted our own independent review and conclude the issues lack merit. Thus, we affirm the PCRA court's order denying Miller's first PCRA petition and grant PCRA counsel's petition to withdraw his representation.

Petition to Withdraw Granted; Order Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/10/2017