J-A20019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| VINCENT THOMAS WALLACE | : | |
| | : | |
| Appellant | : | No. 1238 WDA 2020 |

Appeal from the Judgment of Sentence Entered June 12, 2020
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-CR-0000270-2019

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:                    FILED: NOVEMBER 23, 2021

Appellant, Vincent Thomas Wallace, appeals from the aggregate judgment of sentence of 12-24 years' incarceration, imposed following his conviction for rape,[1] strangulation,[2] and related offenses.[3] Herein, Appellant claims he is entitled to a new trial, alleging a violation of **Brady v. Maryland**, 373 U.S. 83 (1963). After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

Early on the morning of March 3, 2019, at approximately 2:00 A.M., [Appellant] knocked on [Victim]'s door in Ford City, Pennsylvania. The two had known each other for a few months. They then walked to [Appellant]'s house several blocks away, to

---

[1] 18 Pa.C.S. § 3121.

[2] 18 Pa.C.S. § 2718.

[3] The trial court sentenced Appellant to 8-16 years' incarceration for rape, a consecutive term of 4-8 years' incarceration for strangulation, and to no further penalty for all remaining offenses.

have some drinks and smoke marijuana. [Victim] and [Appellant] each began drinking an alcoholic beverage called Twisted Tea while another man rolled them a marijuana cigarette. After a short time, they headed upstairs to [Appellant]'s room ostensibly to smoke.

Upon entering the room, [Victim] took a seat on the side of the bed, smoking and sipping the Twisted Tea. [Appellant] walked in after her and remained standing. After a short time[,] he forced himself upon her, pushing her back onto the bed. He then penetrated her vagina with his penis through her leggings, made of a thin, stretchy material, under which [Victim] was not wearing anything. He stopped to pull her pants off, when [Victim] began yelling loudly for him to stop. [Appellant] began having intercourse with her, this time placing his hands on her neck and choking her while engaged in the act. After removing his hands from her neck[,] he covered her face with a pillow, all the time continuing to have sex with her, and threatening her, telling her that she "wasn't going to get out alive." [Victim]'s head was hanging over the edge of the bed and hitting the wall paneling while this was happening.

[Appellant] removed the pillow[] and continued removing articles of clothing from [Victim] as he had sex with her. She repeatedly asked him to stop and told him she wanted to go home. Brianna Hynes, sleeping over her friend's house next door, testified to hearing yelling and struggling through the wall over the course of a few hours. In total[,] [Appellant] had sex with [Victim] six times over the course of those hours, with various time periods between each assault, before growing tired. At that point[,] [Victim] pushed him off her, grabbed her things, and ran downstairs.

[Victim] dressed herself, left the house, and called Armstrong County Detective Frank Pitzer as she walked away from the residence. [Detective] Pitzer was [Victim]'s arresting officer for a drug-related offense. [Detective] Pitzer told her to call 9-1-1, which she did, and the 9-1-1 operator told her to walk to the Ford City police station, where she then went and filed a report.

Following the police report, [Victim] went to the hospital, where she had a SANE[4] test performed, commonly known as a "rape kit." DNA evidence was collected over the course of the day, and

_____

4 Sexual Assault Nurse Examiner.

- 2 -

pictures [were] taken of [Victim]. She gave a supplemental statement and had more pictures taken on March 5, 2019, two days after the assault.

Trial Court Opinion (TCO), 1/5/21, at 3-5.

Following a trial that concluded on March 13, 2020, the jury convicted Appellant of six counts each of rape, sexual assault,[5] and aggravated indecent assault,[6] and one count each of strangulation, unlawful restraint,[7] terroristic threats,[8] and simple assault.[9] On June 12, 2020, the trial court sentenced Appellant as stated, *supra*. Subsequently, Appellant

filed a timely post-sentence motion for [a] new trial on May 26, 2020, and following post-trial discovery and an amended motion, [he] ultimately filed his second amended motion on September 4, 2020. The court held a hearing on the motion on October 14[, 2020]. On November 2, 2020, Appellant's second amended motion for a new trial was denied.

*Id.* at 1-2 (unnecessary capitalization omitted).

Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on January 5, 2021. Appellant now presents the following question for our review: "Did the trial court err in concluding that, even in spite of the Commonwealth['s] improperly withholding impeachment evidence,

---

[5] 18 Pa.C.S. § 3124.1.

[6] 18 Pa.C.S. § 3125.

[7] 18 Pa.C.S. § 2902.

[8] 18 Pa.C.S. § 2706.

[9] 18 Pa.C.S. § 2701.

[Appellant] received a fair trial worthy of confidence in the verdict?" Appellant's Brief at 6.

Appellant's multi-part claim concerns the trial court's determination that the Commonwealth's withholding of *Brady* evidence did not deprive Appellant of a fair trial.

> In *Brady*, the United States Supreme Court held that "suppression by the prosecution of favorable evidence to an accused upon request violates due process where the evidence is material either to guilt or to punishment…." *Brady*, 373 U.S. at 87. *Brady's* mandate is not limited to pure exculpatory evidence; impeachment evidence also falls within *Brady's* parameters and therefore must be disclosed by prosecutors. *U.S. v. Bagley*, 473 U.S. 667, 677 (1985). However, "the prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* at 675.
>
> [T]o establish a *Brady* violation, a defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. *Commonwealth v. Dennis*, 17 A.3d 297, 308 (Pa. 2011). The burden rests with the defendant to "prove, by reference to the record, that evidence was withheld or suppressed by the prosecution." *Commonwealth v. Paddy*, 15 A.3d 431, 451 (Pa. 2011). The withheld evidence must have been in the exclusive control of the prosecution at the time of trial. No *Brady* violation occurs when the defendant knew, or with reasonable diligence, could have discovered the evidence in question. Similarly, no violation occurs when the evidence was available to the defense from a non-governmental source. *Id.*
>
> To demonstrate prejudice, "the evidence suppressed must have been material to guilt or punishment." *Commonwealth v. Gibson*, 951 A.2d 1110, 1126 (Pa. 2008). Evidence is material under *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the trial could have been different. *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995). "The

mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial[,] does not establish materiality in the constitutional sense." *Commonwealth v. McGill*, 832 A.2d 1014, 1019 (Pa. 2003) (quoting *U.S. v. Agurs*, 427 U.S. 97, 109–10 (1976)). The relevant inquiry is "not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles*, 514 U.S. at 434. To prove materiality where the undisclosed evidence affects a witness' credibility, a defendant "must demonstrate that the reliability of the witness may well be determinative of [the defendant's] guilt or innocence." *Commonwealth v. Johnson*, 727 A.2d 1089, 1094 (Pa. 1999).

*Commonwealth v. Haskins*, 60 A.3d 538, 546–47 (Pa. Super. 2012) (citations reformatted).

Here, Appellant asserts that the Commonwealth repeatedly withheld *Brady* evidence. First, he claims the District Attorney had determined prior to trial that Detective Pitzer had interfered in Appellant's prosecution. Appellant's Brief at 17. Appellant maintains that Detective Pitzer told Victim not to trust the District Attorney's office, which, *inter alia*, resulted in his termination from employment. *Id.* at 15-16. Second, Appellant contends that the Commonwealth failed to disclose that Victim was a confidential informant ("C.I.") for police agencies in Armstrong County prior to March 3, 2019, contrary to her testimony at trial, which he claims was supported by evidence that Detective Pitzer referred to Victim as a C.I. in a text message sent to the District Attorney. *Id.* Appellant also asserts that, between the dates of her arrest by Detective Pitzer and the rape, Victim and Detective Pitzer repeatedly communicated, and Victim "provided Detective Pitzer with

information regarding drug activity in Armstrong County." *Id.* at 17. Third,

Appellant contends that the Commonwealth withheld a text message from

Detective Pitzer to Victim that conflicted with Victim's trial testimony regarding

the timeline of events on the evening of the rape. *Id.* at 16.

The trial court states that the first two

allegations of a *Brady* violation stem from two uncontested circumstances, both of which occurred in the months between the rape on March 3, 2019[,] and the trial. First, Armstrong County Detective Frank Pitzer, employed by the District Attorney, had some sort of differences with his boss which caused him to caution … [V]ictim … to be wary in her dealings with the District Attorney. The District Attorney considered this to be insubordination at best, and intentional interference with a pending criminal case at worst. For this, and apparently other reasons, the District Attorney terminated Detective Pitzer's employment. It is worth noting at the outset that Detective Frank Pitzer was not the prosecuting police officer in this case, nor was he a witness for either the Commonwealth or the defense at trial. While [Detective] Pitzer's warning to [Victim] had repercussions for [Detective] Pitzer himself, there is no evidence that it had any impact whatsoever on this case.

The second circumstance had to do with [V]ictim's activities as a [C.I.]. It is uncontested that at the time of the rape[,] [V]ictim was not working as a [C.I.] for any agency whatsoever. She was cross[-]examined about this at trial and denied that she was a C.I. and more specifically [denied] that she "targeted" [Appellant] on March 3. However, when he learned of the assault, Detective Pitzer sent the District Attorney a text message in which he identified [Victim] as "our C.I." Detective Pitzer later explained that while [Victim] may have informally provided some drug-related information, she was never formally signed up as a [C.I.] by him, which would have involved her in undercover drug buys. His "our C.I." text appears to have been a simple mistake in nomenclature. The District Attorney did, however, learn that [Victim] had worked as a C.I. for an unspecified agency, not the local drug task force, sometime after the rape[,] but prior to trial. The District Attorney did not inform [Appellant's] trial counsel of

this[] because she did not believe it to be relevant to any issue involved in this case[] and therefore not exculpatory.

TCO at 13-14.

Regarding the undisclosed evidence of Detective Pitzer's termination by the District Attorney, and his 'warning' to Victim not to trust the District Attorney, the trial court determined that these facts were not relevant to any issue at trial, nor to the credibility of any witnesses. On that basis, the court determined that Appellant failed to demonstrate that the withheld evidence undermined the fairness of his trial. *See id.* at 14. The Commonwealth agrees with the trial court, asserting that:

> This evidence … fails prong (3) of the *Brady* test in that it is not material to this case. [Detective] Pitzer was not the prosecuting officer, and had no relation to the investigation or trying of this case, nor was he called as a witness for the Defense or the Prosecution. [Appellant] has failed to make a showing that had this evidence been discovered it would have affected the outcome of this case in the form of prejudice. [Appellant] asserts that [with] this information, [he c]ould have cast doubt on whether the District Attorney could act properly as the prosecutor of this case, however, the events that [led] to [Detective] Pitzer's termination were separate and apart from this case, and [Detective] Pitzer's involvement was so minimal it would not have been material to the determination of [Appellant]'s guilt or innocen[ce].
>
> There is also no showing by [Appellant] as to how the termination of an officer unrelated to the case would have resulted in different treatment of the case by the District Attorney sufficient to undermine confidence in the verdict beyond mere conjecture, thereby making the termination non-material evidence. Because of this, there was no *Brady* violation … concerning this evidence.

Commonwealth's Brief at 11-12.

In response, Appellant argues that:

> The information contained in the December 13, 2019 termination letter is also material for ***Bagley*** purposes.[10] In that letter, the District Attorney writes that Detective Pitzer was being terminated due to his contact with [Victim] in defiance of her order to him to have no such contact, and that said contact included Detective Pitzer['s] interfering in the prosecution of [Appellant]. Had that suppressed information been made known to the defense, not only would it have been used to impeach and call into doubt the veracity of the Commonwealth's case against [Appellant], but it would also have cast doubt upon whether the District Attorney's Office could properly act as the prosecutor in prosecuting [Appellant]. Indeed, the District Attorney may well have found herself in the capacity of a witness at [Appellant]'s trial.

Appellant's Brief at 20.

We agree with the Commonwealth and the trial court. Appellant argues generally that this evidence would be used "to impeach and call into doubt the veracity of the Commonwealth's case," but he provides no support for this argument by explaining, specifically, how prompt disclosure of this evidence could have undermined the Commonwealth's evidence at trial, or the credibility of its witnesses, regarding Appellant's prosecution for his sexual assault of Victim. Furthermore, Appellant does not cite any relevant legal authority, or meaningfully develop any argument, supporting his speculation that the District Attorney had a conflict of interest or other ethical deficiency in the prosecution of Appellant's trial due to the firing of Detective Pitzer. Appellant also fails to direct this Court's attention to any evidence of record tending to demonstrate that the conflict between Detective Pitzer and the

---

[10] In ***Bagley***, the Supreme Court held that impeachment evidence that is not directly exculpatory may still be material and, therefore, must be disclosed under ***Brady***.

District Attorney was relevant to Appellant's guilt or innocence merely because Detective Pitzer had improper contact with Victim. Moreover, Appellant fails to explain how this information might have assisted in his preparation for trial. Thus, Appellant has not met his burden to demonstrate that prompt disclosure of this evidence could have reasonably affected the fairness of his trial.

Next, Appellant alleges that the Commonwealth withheld evidence that Victim was working with Detective Pitzer as a C.I. Specifically, Appellant maintains that Victim "testified at trial that she was never working as an informant for the Commonwealth, and that she had no communications with Detective Pitzer other than when he transported her to her preliminary hearing." Appellant's Brief at 18. He claims that Victim's testimony at trial was "directly refuted" by the detective's testimony at the hearing and in his text messages with the District Attorney, wherein Detective Pitzer referred to Victim as a C.I. *Id.*

The trial court determined that the absence of this evidence did not deprive Appellant of a fair trial. The court stated that it was "uncontested that at the time of the rape that the victim was not working" as a C.I., and that at trial, she had specifically denied targeting Appellant on behalf of law enforcement. TCO at 13-14; *see also* N.T., 3/11/20, at 37 (Victim's testimony during direct examination that she did not target Appellant on behalf of Detective Pitzer). Victim "had worked as a C.I. for an unspecified agency, not the local drug task force, **sometime after the rape but prior to trial.**" TCO at 14 (emphasis added). Moreover, the trial court found that

Detective Pitzer's reference to Victim as a C.I. in a text message to the District Attorney "appears to have been a simple mistake in nomenclature" because Victim had passed along "drug-related information" to the detective but he had "never formally signed up" Victim as a C.I., "which would have involved her in undercover drug buys." *Id.* Furthermore, the court found that Appellant failed to provide any evidence that Victim was interacting with Appellant on behalf of law enforcement on the night of the rape. *See id.* at 15 (stating that "there have been no hints beyond mere conjecture that [Victim] went to [Appellant's home] for any reason other than to smoke and drink").

In addition to agreeing with the rationale provided by the trial court, we reject Appellant's exaggerated characterization of Victim's testimony at trial. Victim was not asked at trial whether she was, or ever had been, a C.I. Rather, during cross-examination, Victim was asked whether she and Detective Pitzer ever discussed "making controlled purchases of narcotics from [Appellant]." N.T. at 84. She replied, "No." *Id.* Victim was also asked whether her testimony against Appellant was in any way related to a promise made by the Commonwealth or Detective Pitzer regarding any of Victim's pending criminal cases. *Id.* at 89. Victim repeatedly denied any such promises were made. *Id.* Victim did not deny being a C.I. or an informant **at any time**, nor did her testimony at trial leave that impression. Thus, the existence of evidence that Victim was at some point an informant or C.I. for police does not contradict or otherwise undermine her trial testimony,

- 10 -

particularly where there is no evidence that she was acting as an actual or informal agent for police when interacting with Appellant in the events that led to the criminal charges in this matter.

In light of the peripheral nature of this credibility attack, the lack of any clear conflict with Victim's trial testimony, and because no evidence exists that Victim had ever worked on behalf of the Commonwealth with respect to her relationship to Appellant,[11] we agree with the trial court that the undisclosed evidence of Detective Pitzer's reference to Victim as a C.I. in a text message with the District Attorney was not material to Appellant's guilt or innocence, and did not undermine the fairness of his trial.

Finally, Appellant contends that the Commonwealth withheld evidence that contradicted Victim's trial testimony regarding her initial interactions with Appellant on March 3, 2019. Appellant argues that

> [Victim] at trial testified that on the evening of the alleged rape, she and [Appellant] engaged in pleasantries and socialized with one another for some time prior to him beginning to rape her. In the text messages between Detective Pitzer and the District Attorney, however, [Detective] Pitzer tells the District Attorney that [Victim] related to him on the morning after the alleged rape that [Appellant] began to rape her as soon as she went into his house.

Appellant's Brief at 19.

We disagree with Appellant, and instead agree with the Commonwealth that Victim's "testimony at trial indicated that the two spoke in the living room

---

[11] Victim admitted at trial that she was in contact with Detective Pitzer at the time of the rape, and that she knew him to be "the head of … the Armstrong County Drug Task Force" at that time. N.T. at 81.

of her home exchanging pleasantries as [Appellant] indicated, not in [Appellant]'s home, and only stayed downstairs in [Appellant]'s kitchen for long enough to get a drink and roll a joint, so the text messages do not show any significant contradictions" between Victim's testimony and the text message. Commonwealth's Brief at 13. Victim testified that her interaction with Appellant began on March 3, 2019, at her own home, where the two talked for about "10 to 15 minutes." N.T. at 7. Victim indicated that little transpired between her arrival at Appellant's home and the assault. She only testified she retrieved an alcoholic drink from Appellant's refrigerator, and then accompanied Appellant to his room, where she briefly smoked marijuana. *Id.* at 9, 13. Victim stated that the sexual assault began soon thereafter. *Id.* at 15. On these facts, the record does not demonstrate an obvious conflict with the truth of the hearsay statement imbedded in the text message between Detective Pitzer and the District Attorney that would call into question the fairness of Appellant's trial, especially since the duration of time between Victim's arrival at Appellant's home and the assault was not a crucial issue in dispute at his trial.

In sum, we agree with the trial court that none of the withheld evidence was so prejudicial that its omission deprived Appellant of a fair trial. Accordingly, we agree with the trial court that Appellant was not entitled to relief under *Brady*.

Judgment of sentence *affirmed*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  <u>11/23/2021</u>