J-S23045-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
Appellee   :
  :
v.   :
  :
BERNARD K. BOND   :
  :
Appellant   :   No. 256 EDA 2023

Appeal from the PCRA Order Entered January 20, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000733-2017

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:       **FILED SEPTEMBER 7, 2023**

Appellant, Bernard K. Bond, appeals from the order entered in the Philadelphia County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA").[1] We affirm.

The PCRA court's opinion set forth the relevant facts of this case as follows:

> On October 4, 2016, at approximately 10:30 a.m., complainant Jay Truesdale flagged down police outside the Carolina Food Market, located on Ridge Ave. in Philadelphia. [Complainant] told police that he was robbed of money from his car, his car keys and cell phone at gunpoint by males who then fled from the scene. Based on [Complainant's] interview, Detective Martin was able to generate two suspects: (1) a male by the nickname of "Duly"; and (2) Appellant, who is [Complainant's] cousin. Detective Martin produced a photo of Appellant, whom [Complainant] identified without hesitation, stating, "That's my cousin.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

J-S23045-23

That's my cousin." [Complainant] then signed and dated the photo of Appellant. Appellant ultimately was arrested several weeks later on October 26, 2017. On the same date of the robbery, Detective Martin went to the Carolina Food Market, where he obtained two surveillance videos from both inside and outside the store. The videos showed Appellant standing next to and conversing with a taller black male ("Duly") inside the Carolina Food Market, standing immediately next to Duly as he approached [Complainant's] car, entered it and robbed [Complainant] of his possessions, and walking back with Duly into the store, where the two men then shake hands. At trial, [Complainant] identified Appellant and Duly as the individuals who robbed him.

[Complainant] further testified that, prior to the preliminary hearing in this case, he was approached by two men, who aggressively warned him, "You're going to go down to court and you're going to say that [Appellant] had nothing to do with that case." That same night, [Complainant] took a Greyhound bus out of Pennsylvania, in fear for his life.

(PCRA Court Opinion, filed 2/14/23, at 2-3) (internal footnote and record citations omitted).

Procedurally:

On November 30, 2017, following a jury trial before [the trial] court, Appellant was convicted of criminal conspiracy to commit robbery. On February 9, 2018, the court imposed a mandatory minimum sentence of 10 to 20 years' incarceration.

Appellant filed a post-sentence motion for reconsideration, followed by a timely direct appeal to the Pennsylvania Superior Court. The judgment of sentence was affirmed on March 25, 2020. The Pennsylvania Supreme Court denied *allocatur* on September 22, 2020. [Appellant] filed a timely *pro se* PCRA petition [on September 9, 2021,] and appointed counsel … filed an amended petition on October 15, 2021. A notice of intent to dismiss was issued on April 3, 2022, and a dismissal order was entered on April 22, 2022. On the same day, April 22, 2022, [Appellant] filed a second PCRA petition alleging ineffective assistance of PCRA

- 2 -

counsel and requested that new counsel be appointed.[2] The PCRA court granted [Appellant's] request, vacated the dismissal order, and appointed [current counsel]. A counseled supplemental petition was filed on July 23, 2022. A notice of intent to dismiss was issued on November 21, 2022, and dismissal of the petition was ordered on January 20, 2023.

(*Id.* at 1-2) (internal citations omitted) (some capitalization omitted).

Also on January 20, 2023, Appellant timely filed a notice of appeal. On January 24, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal. Appellant timely filed his Rule 1925(b) statement on January 25, 2023.

Appellant now raises one issue for this Court's review:

Did the PCRA court err and was dismissal without a hearing not supported by the record and free from legal error because trial and prior PCRA counsel were ineffective for failing to present testimony from available witnesses, family members of Appellant, that were implicated in witness intimidation in relation to Complainant when there was no intimidation and the failure to present testimony from these witnesses prejudiced Appellant because the jury inferred consciousness of guilt when there was none?

(Appellant's Brief at 4).

"Our standard of review of [an] order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error."

---

[2] Although the PCRA court's opinion refers to this filing as a second PCRA petition, Appellant styled the *pro se* document as a response to the court's issuance of Pa.R.Crim.P. 907 notice.

*Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa.Super. 2021) (quoting *Commonwealth v. Barndt*, 74 A.3d 185, 191-92 (Pa.Super. 2013)). "The PCRA court's factual findings are binding if the record supports them, and we review the court's legal conclusions *de novo*." *Commonwealth v. Prater*, 256 A.3d 1274, 1282 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 268 A.3d 386 (2021).

On appeal, Appellant argues that "Complainant made multiple allegations of witness intimidation relating to Appellant and his family." (Appellant's Brief at 12) (citing N.T. Trial, 11/29/17, at 61-62, 105-110). Appellant emphasizes that the prosecutor elicited "in-court identifications of Appellant's mother, Pamela Bond, as well as Appellant's stepfather, Reginald Carter, implicating them in witness intimidation in relation to Complainant and on behalf of Appellant." (*Id.* at 12). Appellant insists, however, that he was not involved in witness intimidation. Moreover, Appellant asserts that his family members wanted to testify on his behalf to deny any involvement with witness intimidation. (*Id.*) Appellant maintains that he "and his family raised this issue with trial counsel as well as prior PCRA counsel," but his attorneys took no action. (*Id.* at 13). Appellant also contends that he "suffered prejudice as a result of these attorneys' failure to show that neither Appellant nor his family were involved in any witness intimidation." (*Id.*) Appellant concludes that all prior counsel were ineffective for failing to present evidence to refute the allegations of witness intimidation, and the PCRA court erred in

dismissing his petition. We disagree.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 612 Pa. 333, 30 A.3d 1111 (2011).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has forgone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*,

852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Spotz*, 624 Pa. 4, 33-34, 84 A.3d 294, 312 (2014) (internal citations and quotation marks omitted). "[A] criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Hopkins, supra* at 876 (quoting *Commonwealth v. Chambers*, 570 Pa. 3,

33, 807 A.2d 872, 883 (2002)).

For claims of ineffectiveness based upon counsel's failure to call a witness:

> A defense attorney's failure to call certain witnesses does not constitute *per se* ineffectiveness. In establishing whether defense counsel was ineffective for failing to call witnesses, a defendant must prove the witnesses existed, the witnesses were ready and willing to testify, and the absence of the witness' testimony prejudiced petitioner and denied him a fair trial.

*Commonwealth v. Cox*, 603 Pa. 223, 267-68, 983 A.2d 666, 693 (2009). A petitioner "must show how the uncalled witness' testimony would have been beneficial under the circumstances of the case." *Commonwealth v. Gibson*, 597 Pa. 402, 441, 951 A.2d 1110, 1134 (2008).

Additionally, Appellant now presents a "layered" claim of ineffective assistance, referring to both trial counsel and prior PCRA counsel's ineffectiveness.

> [W]here, such as here, a petitioner must "layer" claims of ineffective assistance of counsel, he "must plead in his PCRA petition that his prior counsel, whose alleged ineffectiveness is at issue, was ineffective for failing to raise the claim that the counsel who preceded him was ineffective in taking or omitting some action." The petitioner must further "present argument, in briefs or other court memoranda, on the three prongs of the [the ineffectiveness] test as to each relevant layer of representation."

*Commonwealth v. Montalvo*, 651 Pa. 359, 379-80, 205 A.3d 274, 286 (2019) (quoting *Commonwealth v. McGill*, 574 Pa. 574, 589, 832 A.2d 1014, 1023 (2003)).

Instantly, an examination of the relevant portions of the trial transcripts reveals that Complainant did not actually link Appellant's family members to the purported witness intimidation. At the beginning of Complainant's direct examination, the prosecutor asked for biographical information, including Complainant's age, his birthplace, and neighborhoods where he lived. (*See* N.T. Trial, 11/29/17, at 60). The prosecutor asked whether Complainant had family members living in Philadelphia, and Complainant responded that he did. (*Id.*) The prosecutor then asked whether Complainant's family were present in the courtroom. (*Id.* at 61). Complainant identified Appellant, Ms. Bond, and Mr. Carter. (*Id.* at 61-62). Complainant later explained that his stepfather is Appellant's uncle. (*Id.* at 63).

Much later during his direct examination, Complainant testified that he was threatened before Appellant's preliminary hearing. (*Id.* at 102). Specifically, two men confronted Complainant in the fall of 2016, while Complainant was at his father's house. (*Id.* at 103-04). The unidentified men told Complainant that he "better go to court and [he] better say that [Appellant] didn't have nothing to do with it." (*Id.* at 102). Complainant described the men as follows: "One guy was probably about six-foot tall. The other guy was probably about five-seven or five-six." (*Id.* at 104). Complainant did not know these men. (*Id.*) Further, Complainant testified that the men were not members of his family. (*Id.* at 105).

The PCRA court analyzed this testimony and determined that it did not

- 8 -

implicate Appellant or his family members in the purported witness intimidation:

> Here, Appellant has failed to show how either Mr. Carter or Ms. Bond would have offered any relevant testimony. Appellant provided a witness certification from Mr. Carter (but not Ms. Bond) in his supplemental petition. Mr. Carter stated that he believes that the complainant implied that he and other members of his family threatened the complainant; that he told trial counsel that they were willing to testify that they never threatened the complainant…. According to Mr. Carter's statement, all of this was told to trial counsel, however, according to Appellant, she was ineffective for not calling them as witnesses.[3]
>
> First, there was no testimony that would implicate either Mr. Carter or Ms. Bond in the incident described by the complainant. [Complainant] clearly described these individuals as two men that he did not recognize. When identifying his family members in the courtroom, he did not implicate them in connection with the aforesaid incident. While those individuals may have made a subjective conclusion that they were being referred to, their feelings about being identified as family members is not evidence. Their perceived implication is a far stretch from relevant evidence.

(PCRA Court Opinion at 8-9).

Our review of the record confirms the PCRA court's conclusions. Regardless of Ms. Bond or Mr. Carter's willingness to testify, Appellant cannot demonstrate that the absence of their proposed testimony denied him a fair

_____

[3] We note that the record undermines these assertions. After the Commonwealth called its final witness, the court conducted a brief colloquy with Appellant. At that time, Appellant indicated that he had discussed possible witnesses with trial counsel, but he did not wish to put forth additional evidence. (*See* N.T. Trial, 11/29/17, at 160). In reference to trial counsel's performance, Appellant commented, "She did good." (*Id.*)

- 9 -

trial. *See Cox, supra*. Thus, trial counsel cannot be considered ineffective for failing to present these witnesses, and prior PCRA counsel cannot be considered ineffective for failing to pursue the claim. *See Montalvo, supra*; *Smith, supra*. Accordingly, we affirm the order dismissing the PCRA petition.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/07/2023