J-S28034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER FRANCIS BLUST, | : | |
| | : | |
| Appellant | : | No. 1381 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 17, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002238-2022

BEFORE: STABILE, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED NOVEMBER 27, 2024**

Peter Francis Blust ("Blust") appeals from the judgment of sentence imposed following his jury convictions of access device fraud, criminal use of a communication facility, theft by unlawful taking, receiving stolen property, and identity theft.[1]  After careful review, we affirm.

The trial court summarized the factual and procedural history as follows: Blust "was a practicing criminal law attorney and a member of the bar in this Commonwealth and New Jersey during all relevant proceedings in this matter."  Trial Court Opinion, 2/5/24, at 3 n.7.  The Commonwealth alleged that Blust charged several unauthorized transactions to a civil client's credit card.

> On May 16, 2022, [Blust] was formally charged with access device fraud, criminal use of a communication facility, theft by unlawful taking, receiving stolen property, and identity theft.  On

---

[1] *See* 18 Pa.C.S.A. §§ 4106(a)(1)(ii), 7512(a), 3921(a), 3925(a), 4120(a).

May 27, 2022, [Blust, appearing *pro se*] was arraigned, where he plead[ed] not guilty. That same day, [Blust's] trial was scheduled for August 5, 2022.

On June 29, 2022, the Bucks County Office of the District Attorney sent [Blust] the discoverable materials . . . in [its] files[, and] filed [its] request for pre-trial discovery . . ..

On July 26, 2022, at [Blust's] request, the [trial court] continued [the] trial date from August 5, 2022, to September 15, 2022, as [Blust] needed more time to prepare.

On September 13, 2022, the Commonwealth filed a motion *in limine* . . . to preclude testimony or evidence concerning an alleged medical condition of the victim, and preclude testimony or evidence concerning the victim allegedly assaulting [Blust].

On September 14, 2022, . . . Samuel A. DiMatteo[, Esquire ("Attorney DiMatteo"),] filed his entry of appearance to represent [Blust] in the instant matter. On [that same day, Attorney] DiMatteo requested that [Blust's] trial be continued, citing more time was needed to prepare. [The trial court] granted this continuance request and scheduled [Blust's] trial for October 31, 2022.

On October 31, 2022, [Blust] requested that his trial be continued yet again, citing that he needed more time to prepare. The [trial court] granted [Blust's] request and continued the trial to November 17, 2022.

On November 17, 2022, [Blust] again . . . needed more time to prepare. [The trial court] continued [Blust's trial] from November 17, 2022, to January 9, 2023. . . . On January 9, 2023, [Attorney] DiMatteo, requested to continue the trial date. [The trial] court granted [Blust's fifth] request, and . . . continued [the trial] from January 9, 2023, to March 13, 2023.

On March 13, 2023, [Blust's] first jury trial began. On March 16, 2023, [the trial] court declared a mistrial, without prejudice, as a result of a deadlocked jury. [Blust's] second jury trial was then scheduled for May 15, 2023.

Trial Court Opinion, 2/5/24, at 1-3 (footnotes and unnecessary capitalization omitted).

"[W]hile the jury was deliberating during [Blust's] first jury trial, [Blust] appeared before [the same trial] court as an attorney representing his client on an unrelated criminal bench warrant matter." *Id*. at 3 n.7. Then, following the mistrial,

> [o]n March 21, 2023, [Attorney DiMatteo] filed a motion to withdraw, citing an irreparable breakdown in the attorney client relationship and an inability to further represent [Blust] without incurring financial hardship. On March 24, 2023, [the trial] court issued an order directing the Commonwealth and [Blust] to file an answer to [Attorney] DiMatteo's motion to withdraw. [Blust did not respond and Attorney] DiMatteo filed a motion for final order to withdraw appearance on April 10, 2023. On April 12, 2023, [the trial] court [permitted Attorney] DiMatteo . . . to withdraw[.] On April 13, 2023, [Blust and Attorney] DiMatteo filed a substitution of attorney appearance, where [Attorney] DiMatteo [withdrew] his appearance . . . and [Blust], a licensed attorney, enter[ed] his appearance on his own behalf.

> On May 5, 2023, [Blust,] filed his first omnibus pre-trial motion . . . to withdraw his *pro se* appearance, [claiming] that . . . [he] made [an] error [in the substitution of counsel which] prevented the Defenders Association of Bucks County [("Public Defender's Office")] from . . . represent[ing] him[.]

> On May 10, 2023, [the trial] court ordered that [Blust's] omnibus pre-trial motion be addressed on the day of [the] scheduled trial, May 15, 2023. [The trial] court also directed that all remaining pre-trial motions were to be filed by May 11, 2023. [Blust] was also ordered to submit his application to the . . . Public Defender's Office by no later than 4:00 P.M. on May 10, 2023.

> \* \* \* \*

> [Blust]'s second jury trial began on May 15, 2023, and ended on May 17, 2023. Before the jury selection process began, [the trial] court held a hearing addressing [Blust's] pre-trial

motions, filed May 5, 2023[, including his] motion to withdraw his appearance as attorney for himself. [The trial] court noted that [Blust] was ordered to apply for representation at the Public Defender's Office and on Friday, May 12[], 2023, [the trial court] received confirmation via email from the Public Defender's Office that [Blust] did not qualify for [its] representation. [The trial] court also noted on the record that [Blust] had two months to retain private counsel, but failed to do so. [Blust] claimed to have difficulty communicating with the Public Defender's Office, but [the trial] court's review of documentation from the Public Defender's Office clearly stated that [Blust] did not qualify for [its] representation. In addition to the e-mail from the Public Defender's Office clearly stating that [Blust] did not qualify for [its] representation, [the trial] court requested that . . . an attorney at the Public Defender's Office[] offer testimony on the status of [Blust's] request for representation and subsequent denial. [The attorney from the Public Defender's Office] testified that he had the opportunity to review [Blust's] application and confirmed that [Blust] was denied representation as he did not financially qualify for the Public Defender's [Office's] services.

After [Blust's] pre-trial motions were ruled upon, [Blust] stated that he was not ready for trial and requested a continuance. By this time, the instant matter had been continued five . . . times. The last re-scheduling continued the matter to March 13, 2023, the starting date of what would become [Blust's] first jury trial and result in a mistrial. At the conclusion of the mistrial, [the trial] court scheduled a re-trial date for May 15, 2023. [Blust] was present in the courtroom to hear this scheduling order. Given the number of times that the matter was continued, the fact that [Blust] had ample time to apply for the Public Defender's [Office's] representation or seek private counsel, and the fact that [Blust] was a practicing criminal law attorney, [the trial] court denied [Blust's] request to continue the trial to another date. After these issues were addressed, the jury trial proceeded.

Trial Court Opinion, 2/5/24, at 3-5 (quotation marks, citations, footnotes and unnecessary capitalization omitted, and paragraph break added).

Just before the jury selection process began, Blust denied that trial was scheduled to proceed that day, stating "I am sorry, Your Honor. Please forgive

me. The first words you spoke were that we are here for trial today?" N.T., Jury Trial, 5/15/23, at 3. When the trial court responded, "Yes sir[]," Blust continued to argue: "No, we are not, Your Honor. We are not here for trial." *Id*. Then Blust argued: "I am not represented by counsel. My understanding is that I have the right to an attorney. And if I cannot afford one, which I cannot, that one will be appointed." *Id*. at 22-23. The trial court reiterated that Blust had known, for two months, of the trial date and had time to retain counsel. *See id*. at 4-8, 10. Nevertheless, the trial court specifically offered to appoint standby counsel to assist Blust "during the jury selection process." *Id*. at 23. Blust ignored this offer, and instead again "attempt[ed] to illuminate" the trial court on "what occurred" during his application process for the Public Defender's Office's representation. *Id*. at 23-25. Blust thus proceeded *pro se* through his second trial.

The trial court summarized:

> At the conclusion of the second trial, the jury found [Blust] guilty on all counts. [The trial] court [then immediately] sentenced [Blust] on [access device fraud] to a term of imprisonment [of one to] twenty-three months[' imprisonment]. The trial court also directed that Blust not engage in the practice of law] and . . . granted [Blust's] request to defer the execution of the sentence. . . .

Trial Court Opinion, 2/5/24, at 9 (citations and unnecessary capitalization omitted).

On May 22, 2023, Blust filed a timely notice of appeal but failed to comply with the trial court's Pa.R.A.P. 1925(b) order. The trial court thus issued an opinion suggesting that Blust waived all his issues.

On August 7, 2023, the Superior Court directed the trial court to conduct a **Grazier**[2] hearing. At the hearing, Blust indicated he desired counsel, and after the Public Defender's Office determined he was eligible for representation, the trial court appointed the Public Defender's Office to represent Blust in this appeal. Blust then properly filed a counseled, timely Rule 1925(b) statement, and both he and the trial court complied with Rule 1925.

Blust presents the following issues for our review:

> A. Did the trial court abuse its discretion in denying [Blust's] request for a continuance of his trial in violation of his rights to an attorney, to present a defense, and due process of law, as guaranteed by the Constitutions of the United States and Pennsylvania[?]
>
> B. Did the trial court abuse its discretion in failing to appoint standby counsel, in violation of [Blust's] right to counsel, his right to present a defense, and his right to due process of law, as guaranteed by the United States and Pennsylvania Constitutions[?]

Blust's Brief at 10.[3]

_____

[2] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[3] Blust's Rule 1925(b) statement asserted six issues, four of which he abandoned in this appeal. **Compare** Concise Statement, 12/8/23, at unnumbered 1-2 **with** Blust's Brief at 10. **See** Pa.R.A.P. 2116(a), 2119(a); **see also Commonwealth v. McGill**, 832 A.2d 1014, 1018 n.6 (Pa. 2003) (finding waiver where defendant abandoned claim on appeal).

In Blust's first issue, he argues that the trial court violated his right to present a defense and right to an attorney by denying his May 15, 2023 continuance request. As this Court has explained:

> Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record. . . .

***Commonwealth v. Brooks***, 104 A.3d 466, 469 (Pa. 2014) (quotation marks and citations omitted).

Furthermore,

> > [t]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons.

> Accordingly, a trial court exceeds its constitutional authority only when it exercises its discretion to deny a continuance on the basis of "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay . . .." To determine whether a constitutional violation occurred, "we must examine the circumstances present in the case, especially the reasons presented to the trial court for requesting the continuance."

***Commonwealth v. Sandusky***, 77 A.3d 663, 671-72 (Pa. Super. 2013) (citations omitted). Where a defendant is unable to provide compelling reasons, the trial court does not abuse its discretion in denying a continuance. ***See Commonwealth v. Antidormi***, 84 A.3d 736, 746 (Pa. Super. 2014)

- 7 -

(explaining that the trial court did not abuse its discretion in denying defendant's fifth request for a continuance, "which was based upon nothing more than an unsupported allegation").

This Court has "repeatedly condemned the practice of waiting until the day of trial to request a continuance for the purpose of obtaining a new attorney." *Commonwealth v. Boettcher*, 459 A.2d 806, 810 (Pa. Super. 1983). Our Rule of Criminal Procedure 106(D) provides that a defendant shall not move for a continuance later than forty-eight hours before the time scheduled for trial. *See* Pa.R.Crim.P. 106(D). Rule 106(D) also provides, "A later motion **shall** be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it." *Id*. (emphasis added); *see also Brooks*, 104 A.3d at 478. The trial court may grant a continuance "in the interests of justice." Pa.R.Crim.P. 106(A). The trial court must state on the record the reasons for granting or denying the continuance. *See* Pa.R.Crim.P. 106(C).

Blust contends that the trial court abused its discretion by denying his motion for a continuance on the day of jury selection to obtain counsel. *See* Blust's Brief at 13. Blust avers the trial court made no finding of misconduct or dilatory conduct on his part, and maintains that despite prior continuances, this was his first continuance request based on "the purpose of obtaining counsel." *Id*. at 14, 16. Blust maintains, contrary to the trial court's finding, that his status as an attorney had "no bearing on his constitutional right to

counsel," and in any event, he "practiced predominantly bankruptcy law[,] was not a trial attorney[,] and only conducted three trials in his career in the 1990s." *Id*. at 8, 14 (unnecessary capitalization and punctuation omitted). Blust also claims that he suffered prejudice because "he was not prepared nor qualified to represent himself *pro se* [and] failed to present his same defense [as presented in the mistrial] and it culminated in a conviction of all charges." *Id*. at 17-18.

The Commonwealth responds that Blust requested continuances for five prior trial dates, and his final trial began more than one year after it filed charges against him. *See* Commonwealth's Brief at 13-14; *see also* N.T., Jury Trial, 5/15/23, at 32-33. The Commonwealth also points out that it was prepared for trial and its witnesses, including the victim, "had appeared at least twice for a scheduled jury trial and had already testified in at least two prior proceedings." Commonwealth's Brief at 13-14; *see also* N.T., Jury Trial, 5/15/23, at 34.

In denying Blust's request for another continuation, the trial court noted that the Commonwealth had provided Blust with full and complete discovery and he had ample time to retain counsel after the March 13, 2023, mistrial. *See* N.T., Jury Trial, 5/15/23, at 6-8, 21, 38-39. The trial court reasoned:

> [It] should first and foremost be noted that, at the time of trial, [Blust] was an attorney barred to practice law within our Commonwealth. On the date of his second jury trial, [Blust] requested a continuance, insisting that he was not ready to proceed to trial. By the date of [Blust's] second jury trial on May 15, 2023, it had already been a year . . . from the [filing] of the

- 9 -

criminal information . . . on May 16, 2022. By this time, there had already been five . . . continuances . . . . Indeed, at the conclusion of [Blust's] first jury trial in which he was represented by counsel, [the trial] court stated on the record that the re- trial was scheduled for May 15, 2023. [Blust] was present at the time of this announcement. Thus, [Blust's] claim that he did not anticipate the case being tried on May 15, 2023 is hard to believe at best. After the first jury trial, [Blust] had two months to find and retain private counsel. However, [Blust] opted not to do so and instead entered his appearance, to represent himself, on the record.

[Blust's] need to obtain private counsel was minimal relative to other *pro se* criminal defendants, as [Blust] himself was an attorney licensed to practice in this Commonwealth throughout the course of these proceedings. Because of [Blust's] status as an attorney with criminal court experience, the numerous continuances already granted in the matter, and the fact that [Blust] was on notice two months prior [to] the trial date, [the trial] court determined the efficient administration of justice warranted a denial of [Blust's] continuance request. . . .

Trial Court Opinion, 2/5/24, at 14-15 (citations, footnotes, and unnecessary capitalization omitted).

After our review of the record, we conclude the trial court did not abuse its discretion in denying Blust's request for a continuance under these circumstances. *See Brooks*, 104 A.3d at 469. The record shows that Blust waited until the start of jury selection, two months after it was scheduled, following his first jury trial, to raise his request for a continuance. *See* Pa.R.Crim.P. 106(D). Blust did not offer any compelling reasons to the trial court for his request, nor did he explain why he waited until the day of trial to make the request. *See Antidormi*, 84 A.3d at 746; *see also Boettcher*, 459 A.2d at 810. Despite Blust's present insistence that he was not

- 10 -

experienced in criminal law, he does not dispute the trial court's observation that during jury deliberation in his first trial, he appeared before the same trial court as the attorney for a criminal defendant. *See* Trial Court Opinion, 2/5/24, at 3 n.7. Furthermore, the trial court found not credible Blust's claim that he was not aware of the trial date. We do not disturb this credibility finding nor do we substitute our judgment for that of the trial court. *See Boettcher*, 459 A.2d at 808 (providing that "the credibility of witnesses and the weight to be accorded their testimony is within the province of the factfinder, not the court reviewing the record on appeal"). Thus, in light of our deferential standard of review, we conclude that no relief is due on Blust's first issue. *See Brooks*, 104 A.3d at 469*.*

In Blust's second issue, he argues that the trial court abused its discretion by failing to *sua sponte* appoint standby counsel to represent him. Our Supreme Court has applied an abuse of discretion standard when reviewing a trial court's refusal to appoint standby counsel for a defendant. *See Commonwealth v. Spotz*, 47 A.3d 63, 78 (Pa. 2012)*.* This Court will not find an abuse of discretion "based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. DiStefano*, 265 A.3d 290, 298 (Pa. 2021).

The appointment of standby counsel is governed by Rule of Criminal Procedure 121, which states:

> When the defendant's waiver of counsel is accepted, standby counsel **may be appointed** for the defendant. Standby counsel shall attend the proceedings and shall be available to the defendant for consultation and advice.

Pa.R.Crim.P. 121(D) (emphasis added). While the comment to Rule 121(D) advises a trial court to appoint "standby counsel to attend the proceedings and be available to the defendant for consultation and advice. . . , especially in long or complicated cases," "neither the United States Supreme Court nor our Rules of Criminal Procedure mandate the appointment of standby counsel." *Spotz*, 47 A.3d at 82-83. A court may appoint standby counsel "if and when the accused requests help." *Id*. at 82.

Here, Blust asserts that "the trial court . . . gave **no** consideration to appointing standby counsel." Blust's Brief at 18 (emphasis added). However, Blust concedes that the trial court did consider appointing standby counsel "for the limited purpose of jury selection," but insists the court "failed to follow up on this issue" and should have "appoint[ed] counsel *sua sponte*." *Id*. at 19. Blust further argues that the trial court should have appointed standby counsel because the Public Defender's Office denied him representation. *See id*. at 20-21. He contends that "the Pennsylvania Rules of Criminal Procedure permit a trial court to appoint counsel *sua sponte* whenever the interest of justice so require." *Id*. at 20.

The Commonwealth asserts that Blust has waived this issue of trial court error. The Commonwealth points out the "court specifically offered to appoint standby counsel to assist him during the jury selection process," but argues that "[i]nexpclicably, [Blust] ignored this offer and continued to argue . . . about the alleged deficiencies with his prior application" for representation with the Public Defender's Office. Commonwealth's Brief at 16. In the alternative, the Commonwealth maintains that Blust failed to request standby counsel at any point during the trial, despite being aware of his ability to do so and declining the trial court's offer to appoint standby counsel during jury selection. *See id*. at 18.

The trial court concluded that it did not err in not appointing standby counsel, because it offered Blust standby counsel to assist him in the jury selection process, but Blust ignored this offer. *See* Trial Court Opinion, 2/5/24, at 16-17. The trial court stated:

> At the conclusion of the March 2023 mistrial, while [Blust] was represented by [Attorney] DiMatteo, [the trial court] informed him that the date of his next jury trial was May 15, 2023. On April 13, 2023, [Blust] and [Attorney] DiMatteo[] filed a substitution of attorney appearance, whereupon [Attorney] DiMatteo withdrew his appearance and [Blust] entered an appearance to represent himself. In [Blust's] omnibus pre-trial motion, filed on his own behalf just ten days before the scheduled trial date, [he] moved to withdraw his own appearance, claiming that his entry of appearance was made in error. In response, [the trial] court ordered [Blust] to apply for representation with the Public Defender's Office, even though [Blust] asserted he already did so and was denied representation. On May 12, 2023, the Public Defender's Office . . . confirmed via email that [Blust] did not financially qualify for [its] representation.

- 13 -

Following [Attorney] DiMatteo's motion to withdraw his appearance, [Blust] had nearly a month to retain private counsel. Instead, he chose to enter his appearance on his own behalf. [Blust], a barred attorney in this Commonwealth, had the full capability to represent himself at trial, and his entry of appearance evidences the confidence he had in himself to do so. It was only until May 5, 2023, ten days before trial, that [Blust] moved to withdraw his appearance. What followed was a last-minute scramble for the Public Defender's Office to determine if he qualified for [its] representation. Once [Blust] was determined to be ineligible for representation, the trial date was just three days away. Given the number of continuances in this case and **the fact that [Blust] was a barred attorney in this Commonwealth and the State of New Jersey, [the trial] court determined that appointment of standby counsel was not necessary to perform the services a trained advocate would perform, as [Blust] himself was a trained advocate at the time of trial**.

Indeed, [the trial c]ourt did offer standby counsel to [Blust] to assist him in the jury selection process, even though [Blust], a licensed attorney should know how to select a jury. **However, [Blust] ignored this offer**, and instead "attempted to illuminate" [the] court on what had happened during his application process for [the] Public Defender['s Office's] representation. . . .

Trial Court Opinion, 2/5/24, at 16-17 (emphases added and footnotes and unnecessary capitalization omitted).

Our review of the record reveals that no abuse of discretion occurred. On appeal, Blust does not dispute the trial court's summation that he ignored the offer of standby counsel to assist him in the jury selection process. Furthermore, Blust did not request the appointment of standby counsel at any point during the trial. The trial court concluded that standby counsel was not necessary under the circumstances. **See** Pa.R.Crim.P. 121(D), *comment*. Additionally, Blust was the sole defendant at trial and the duration of the trial

was short. The evidentiary portion lasted two days. The Commonwealth only presented three witnesses. The documentary evidence was not voluminous, and indeed was almost entirely comprised of documents Blust had seen before, such as his own email and voice exchanges with the victim and bank statements indicating charges Blust made himself. Furthermore, the Commonwealth had also admitted these documents at the first jury trial. The Commonwealth's theory of the case was straightforward – the victim retained Blust as his attorney and Blust stole from him by using his credit card for unapproved personal expenses. *See* N.T., Jury Trial, 5/15/23, at 71-73; *see also* N.T., Jury Trial 5/17/23, at 151-52. This was not a capital case, and the trial did not present complicated issues of law. *See* Pa.R.Crim.P. 121(D), *comment*. None of the factors which support appointment of standby counsel were present. *See id*. Thus, we find that the trial court did not abuse its discretion when, after Blust ignored its *sua sponte* offer to provide standby counsel for jury selection, the court did not subsequently *sua sponte* offer standby counsel again. Thus, we conclude no relief is due on Blust's second issue.

Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/27/2024